JOSEPH R. LAMAGNA (State Bar No. 246850)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail: jlamagna@hooperlundy.com

ANDREA L. FREY (State Bar No. 311913)
(*pro hac vice forthcoming*)
BENJAMIN Y LIN (State Bar No. 326703)
**HOOPER, LUNDY & BOOKMAN, P.C.**
44 Montgomery Street, Suite 3500
San Francisco, California 94104
Telephone: (415) 875-8500
Facsimile: (310) 362-8937
E-Mail: afrey@hooperlundy.com
blin@hooperlundy.com

Attorneys for Defendants MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., MOCHI MEDICAL P.A., AEQUITA PHARMACY, LLC, AEQUITA CORPORATION

RONALD J. FRIEDMAN (*pro hac vice pending*)
LEXIE M. SMITH (State Bar No. 324022)
**OGDEN MURPHY WALLACE, PLLC**
701 5th Avenue, Suite 5600
Seattle, Washington 98104
Telephone: (206) 447-7000
Facsimile: (206) 447-0215
E-Mail: rfriedman@omwlaw.com
lsmith@omwlaw.com

Attorneys for Defendants AEQUITA PHARMACY, LLC AND AEQUITA CORP.

RACHAEL PONTIKES
(*pro hac vice pending*)
**BLANK ROME LLP**
444 W. Lake St., Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
E-Mail: rachael.pontikes@blankrome.com

SHANNON E. MCCLURE
(*pro hac vice pending*)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (206) 569-5555
E-Mail: shannon.mcclure@blankrome.com

Attorneys for Defendants MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., AND MOCHI MEDICAL P.A.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., MOCHI MEDICAL P.A., AEQUITA PHARMACY, LLC, AEQUITA CORPORATION,<br><br>Defendants. | Case No. 3:25-cv-3534-JSC<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>*[Filed concurrently with [Proposed] Order; Request for Judicial Notice; and Decl. of Joseph R. LaMagna ISO Defendants' Request for Judicial Notice]*<br><br>Judge Jacqueline Scott Corley<br><br>Action Filed: April 23, 2025 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 28, 2025 at 10:00 am in Courtroom 8, 19th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, or as soon thereafter as the matter may be heard, Defendants MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., MOCHI MEDICAL P.A., AEQUITA PHARMACY, LLC, AEQUITA CORPORATION ("Defendants") will move and hereby do move the Court for an Order dismissing the Complaint in its entirety.

Defendants' Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Joseph R. LaMagna, the files and records in this case, and any further written or oral argument as permitted to be presented at the hearing.

DATED: June 12, 2025

HOOPER, LUNDY & BOOKMAN, P.C.

By: */s/ Joseph R. LaMagna*

JOSEPH R. LAMAGNA
ANDREA L. FREY
BENJAMIN Y. LIN
Attorneys for Defendants

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

## TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES ....................1

I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................2

A. The Mochi Medical Entities: Providing Health Care to Patients ....................2

B. Mochi Health: A Telehealth Company Providing Management Services ....................3

C. Aequita: A Compounding Pharmacy Filling Prescriptions Issued by Doctors ....................3

D. The California Medical Board Polices CPOM, Determining the Standard of Care ....................4

E. Drug Compounding: An Inherently Personalized Form of Drug-Making ....................4

F. The California Board of Pharmacy Polices the Practice of Pharmacy ....................5

G. Lilly's Claims ....................5

III. ARGUMENT ....................6

A. Lilly Lacks Standing Under the Lanham Act ....................6

1. Lilly Has Not Pled That It and Mochi Health Are Direct Competitors ....................6

2. Lilly Has Not Alleged Any Proximate Relationship Between Its Lost Sales and Ads by Mochi Health ....................8

B. Causes of Action I and II Should Be Dismissed Under the Doctrines of Abstention and Primary Jurisdiction ....................9

1. The Medical Board Has the Technical and Policy Expertise to Determine the Standard of Care ....................10

2. The Pharmacy Board Has the Technical and Policy Expertise to Determine False and Misleading Advertisements ....................12

C. Lilly's Claims Fail to Meet Pleading Requirements ....................13

1. Lilly Fails to Plead False Advertising and Lanham Act Claims (Causes of Action II and III) ....................14

2. Lilly Failed to Plead Unlawful, Unfair, or Fraudulent Acts Under the UCL ....................25

3. There is No Actionable Conspiracy Claim (Cause of Action IV) ....................28

IV. CONCLUSION ....................30


HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................. 28, 29

*Allbirds, Inc. v. Giesswein Walkwaren AG*,
No. 19-05638, 2020 WL 6826487 (N.D. Cal. June 4, 2020) ............................................ 8, 24

*Allergan USA Inc. v. Imprimis Pharm., Inc.*,
No. 17-1551, 2018 U.S. Dist. LEXIS 226392 (C.D. Cal. Apr. 30, 2018)........................ 18, 19

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
No. 17-1551, 2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov. 14, 2017) ............................ 20

*Alvarado v. Selma Convalescent Hosp.*,
153 Cal. App. 4th 1292 (2007)................................................................................ 11, 12

*Am. Acad. of Emergency Med. Phy. Group, Inc., v. Envision Healthcare Corp.*,
No. 22-CV-00421-CRB, 2022 WL 2037950 (N.D. Cal. May 27, 2022)............................... 11

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal.4th 503 (1994).................................................................................................. 28

*Argueta v. Walgreens Co.*,
760 F. Supp. 3d 1028 (E.D. Cal. 2024)........................................................................ 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 13

*Azurity Pharms., Inc. v. Edge Pharma, LLC*,
45 F.4th 479 (1st Cir. 2022) ........................................................................................ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 9, 13

*Bobbleheads.com, LLC v. Wright Brothers, Inc.*,
259 F. Supp. 3d 1087 (C.D. Cal. 2017)........................................................................ 24

*Cal. Ass'n of Dispensing Opticians v. Pearle Vision Ctr, Inc.*,
143 Cal. App. 3d 419 (1983)....................................................................................... 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cell. Tel. Co.*,
20 Cal. 4th 163 (1999)............................................................................................ 25, 27

*Cent. Valley Med. Grp., Inc. v. Indep. Physician Assocs. Med. Grp., Inc.*,
No. 19-404, 2019 U.S. Dist. LEXIS 124388 (E.D. Cal. 2019) ............................................ 27

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ........ 11

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) ........ 14, 27

*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 175 F.3d 725 (9th Cir. 1999) ........ 18, 21, 22, 23

*Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011) ........ 13, 16, 26

*Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990) ........ 14, 15

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ........ 29

*Dial A Car v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996) ........ 23

*Dyson, Inc. v. Garry Vacuum, LLC*, No. 10-01626, 2011 U.S. Dist. LEXIS 165514 (C.D. Cal. Jan. 4, 2011) ........ 17

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998) ........ 17, 18, 21

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) ........ 28

*Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504 (2015) ........ 25

*FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444 (6th Cir. 2024) ........ 18, 22

*FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120 (D. Or. 2012) ........ 28

*Grafilo v. Soorani*, 41 Cal. App. 5th 497 (2019) ........ 10

*Grafilo v. Wolfsohn*, 33 Cal. App. 5th 1024 (2019) ........ 10

*Halicki v. United Artists Commc'ns, Inc.*, 812 F.2d 1213 (9th Cir. 1987) ........ 28

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941 (D. Ariz. 2020) ........ 28

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)........24

*Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x778 (10th Cir. 2006)........20

*Intuit Inc. v. HRB Tax Grp., Inc.*, No. 24-00253, 2025 U.S. Dist. LEXIS 76781 (N.D. Cal. April 22, 2025)........23

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005)........6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)........13

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)........3

*Kirchmeyer v. Helios Psychiatry Inc.*, 89 Cal. App. 5th 352 (2023)........10

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. 12-03762, 2014 U.S. Dist. LEXIS 17376 (N.D. Cal. Feb. 11, 2019)........14, 27

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011)........24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)........7, 8

*Linder v. United States*, 268 U.S. 5 (1925)........11

*McColm v. Anber*, 06-7369, 2006 WL 3645308 (N.D. Cal. Dec. 12, 2006)........28

*Med. Bd. of California v. Chiarottino*, 225 Cal. App. 4th 623 (2014)........10

*Mencia-Montes v. Fit Foods Distribution, Inc.*, No. 24-01768, 2025 U.S. Dist. LEXIS 78649 (N.D. Cal. 2025)........26

*Mosafer Inc. v. Broidy*, 2022 U.S. Dist. LEXIS 21001 (C.D. Cal. Feb. 4, 2022)........24

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038 (9th Cir. 2008)........15

*Oregon v. Ashcroft*, 368 F.3d 1118 (9th Cir. 2004)........11

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) ........ 20

*Pom Wonderful, LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014) ........ 18

*Rolls-Royce Corp. v. Heros, Inc.*,
576 F. Supp. 2d 765 (N.D. Tex. 2008) ........ 28

*Sandoz Pharma. Corp. v. Richardson-Vicks*,
902 F.2d 222(3d Cir. 1990) ........ 18

*Shaker v. Nature's Path Foods, Inc.*,
No. 13-1138, 2013 U.S. Dist. LEXIS 180476 (C.D. Cal. Dec. 16, 2013) ........ 14

*Shamsian v. Dep't of Conservation*,
136 Cal. App. 4th 621 (2006) ........ 12

*Shuts v. Covenant Holdco LLC*,
208 Cal. App. 4th 609 (2012) ........ 11

*Sihler v. Fulfillment Lab*,
Inc, 20-01528, 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ........ 28

*Silver v. BA Sports Nutrition, LLC*,
No. 20-CV-00633-SI, 2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020) ........ 20, 21

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ........ 9

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ........ *passim*

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.) ........ 13, 16

*Stiger v. Flippin*,
201 Cal. App. 4th 646 (2011) ........ 12

*Thermolife Int'l, LLC v. BPI Sports, LLC*,
No. 21-15339, 2022 U.S. App. LEXIS 5481 (9th Cir. Mar. 2, 2022) ........ 7, 8, 9

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ........ 4, 5, 16

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........ 24

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011) ........ 7

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Vampire Family Brands, LLC v. MPL Brands, Inc.*,
No 20-9482, 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021) .......... 8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 13, 26

*Zhang v. Superior Ct.*,
57 Cal. 4th 364, 304 P.3d 163 (2013) .......... 28

**Statutes**

15 U.S.C. § 1125(a)(1)(B) .......... 6, 28

21 U.S.C. § 337(a) .......... 18

21 U.S.C. § 352(bb) .......... 19

21 U.S.C. § 353a .......... 4, 5, 16, 19

Cal. Bus. & Prof. Code § 2004 .......... 4

Cal. Bus. & Prof. Code § 2032 .......... 4

Cal. Bus. & Prof. Code § 2052 .......... 24

Cal. Bus. & Prof. Code § 2054(b) .......... 26

Cal. Bus. & Prof. Code § 2220 .......... 4

Cal. Bus. & Prof. Code § 2242 .......... 4

Cal. Bus. & Prof. Code § 2264 .......... 4

Cal. Bus. & Prof. Code § 2400 .......... 4, 24

Cal. Bus. & Prof. Code § 4300 .......... 5, 13

Cal. Bus. & Prof. Code § 4301(f) .......... 5

Cal. Bus. & Prof. Code § 17200 .......... 5, 24, 25

Cal. Bus. & Prof. Code § 17204 .......... 27

California Pharmacy Practice Act .......... 5

Federal Food, Drug, and Cosmetic Act .......... 4

Health & Saf. Code § 110390 .......... 5, 12

Medical Practice Act .......... 4, 10, 11, 12

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**Other Authorities**

Cal. Code Regs. tit. 16, § 1735.2 ........ 5

Fed. R. Civ. P. 8(a) ........ 21

Fed. R. Civ. P. 9(b) ........ 13

Fed. R. Civ. P. 12(b)(6) ........ 13, 15

Fed. R. Civ. P. 12(f) ........ 29

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Defendants Mochi Health Corp. ("Mochi Health"), Mochi Medical CA P.C., Mochi Medical P.A. (collectively "Mochi Medical"), Aequita Pharmacy, LLC, Aequita Corporation (collectively "Aequita") submit the following joint Memorandum in Support of their Motion to Dismiss:

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case represents the latest installment[1] in Eli Lilly's nationwide campaign to bolster Lilly's profits by dictating patient care through the elimination of compounded drugs as a treatment option for weight management. Before this Court, Lilly dons the white coat, inserts itself in the exam room between the doctor and the patient, and urges this Court to allow Lilly—a for-profit drug manufacturer—to decide which medicines doctors should prescribe their patients. But the law doesn't allow a drug manufacturer to control patient treatment under the guise of being an aggrieved victim.

The crux of Lilly's claims is that the Defendants are interfering with Lilly's efforts to have doctors prescribe its manufactured drugs. Lilly alleges that Mochi Health, a telehealth company, engages in the unlicensed corporate practice of medicine ("CPOM") by directing doctors to treat patients with a compounded medication containing tirzepatide, instead of Lilly's own tirzepatide weight loss drugs, Mounjaro® and Zepbound®. Lilly further alleges Mochi Health falsely advertises compounded mediation containing tirzepatide, the active ingredient in Lilly's manufactured drug. Finally, Lilly alleges Mochi Health is not acting alone. Mochi Health is supposedly engaged in a conspiracy—with defendants Mochi Medical, and Aequita—to unfairly compete with Lilly by prescribing, making, and selling compounded drugs containing tirzepatide.

But none of these defendants is Lilly's competitor. Mochi Health is a telehealth company providing administrative (i.e., not clinical) services; the Mochi Medical entities are physician-owned professional corporations whose doctors provide health care services via Mochi Health's telehealth platform; and Aequita is a compounding pharmacy. These defendants are not manufacturers, much less Lilly's direct competitors, so Lilly has no standing to bring its Lanham Act claims (Cause of Action III).

---

[1] To date, Lilly has filed 33 lawsuits across the country relating to compounding with tirzepatide.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Like all doctors, Mochi Medical doctors use their independent clinical judgment to choose the appropriate medication to treat their patients—they ***may*** choose to treat a patient with Lilly's manufactured drug or, they ***may*** choose some other medicine, including a compounded medication containing tirzepatide. Likewise, Aequita or another pharmacy ***may*** fill the prescriptions that these doctors write, including prescriptions for Lilly's branded drugs. Lilly should not be asking this Court to determine why, when, and how a doctor can prescribe compounded tirzepatide, or what constitutes undue influence on medical judgment by a profit-driven, non-professional (or lay) entity. The California Medical Board and Board of Pharmacy have the requisite technical and policy expertise to make these types of determinations—therefore, the law directs this court to abstain from ruling on Lilly's unfair competition and false advertising claims (Causes of Action I and II).

Finally, Lilly fails to meet a litany of basic pleading requirements. For its false advertising allegations, Lilly fails to identify a single literally false statement, fails to plead actual or likelihood of deception, or that the deception would be material, For the unfair competition cause of action, Lilly fails to plead unlawful, unfair, and fraudulent acts. Fatal to both false advertising and unfair competition claims, Lily fails to plead any facts supporting any supposed harm. Finally, Lilly has no independent, underlying tort to manufacture a claim based on conspiracy.

This Court should recognize this case for what it is—a suit designed to intimidate prescribers, limit lawful options available to doctors to properly treat their patients, and reduce patient choice and access to medications. The complaint fails to state a claim, and should be dismissed. Try as it might, Lilly cannot find a cause of action to allow Lilly to dictate how doctors should treat their patients.

## II. FACTUAL BACKGROUND

### A. The Mochi Medical Entities: Providing Health Care to Patients

Both Mochi Medical P.A. (a Florida professional corporation) and Mochi Medical CA P.C. (a California professional corporation) are physician-owned corporations responsible for providing healthcare services to patients, including diagnosis, treatment, and prescribing, all of which are carried out by licensed doctors and other healthcare professionals (collectively as "Mochi

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Providers"). D.I. 1 ¶ 48, n.33; Defendant's Request for Judicial Notice ("RJN"), Ex. A.[2] Dr. Rana Ahmad is Director and CEO of Mochi Medical P.A. and Mochi Medical CA P.C. *Id.* ¶¶ 5, 56, nn.45, 46; RJN, Exs. C, D.

**B. Mochi Health: A Telehealth Company Providing Management Services**

Mochi Health is a telehealth company that acts as a management services organization ("MSO") offering administrative services, technological infrastructure, and support to the Mochi Providers. D.I. 1 ¶ 48, n.33; RJN, Ex. A. In its MSO role, Mochi Health licenses its proprietary telehealth platform to the Mochi Providers, facilitating the virtual care that the Mochi Providers independently provide to patients. *Id.* Mochi Health manages a website on behalf of itself and the Mochi Providers. The website informs prospective patients of the Mochi Providers' services and identifies certain drugs that Mochi Providers may prescribe. D.I. 1 ¶ 127, n.112; RJN, Ex. E. These drugs include semaglutide-based medications, Wegovy® and Ozempic®, manufactured by Lilly's competitor, Novo Nordisk, Lilly's manufactured tirzepatide-based mediations, Zepbound® and Mounjaro®, as well as compounded medications. Lilly concedes that Mochi Health makes "Lilly's genuine medicines" available to some patients. D.I. 1 ¶ 11. Mochi Health does not provide medical services, it does not compound medications, and unlike Lilly, Mochi Health does not manufacture drugs. D.I. 1 ¶ 48, n.33; RJN, Ex. A. Dr. Myra Ahmad is Mochi Health's Co-Founder and CEO. D.I. 1 ¶ 49. Dr. Myra Ahmad is a graduate of the University of Washington School of Medicine. RJN, Ex. B.

**C. Aequita: A Compounding Pharmacy Filling Prescriptions Issued by Doctors**

Aequita Pharmacy, LLC, a Washington limited liability corporation, is a duly licensed compounding pharmacy in Washington State (PHAR.CF.61458335). *Id.* ¶ 18. Aequita Corporation, a Delaware Corporation, provides management services to Aequita Pharmacy. Aequita Pharmacy and Aequita Corporation are referred to collectively as the Aequita Defendants. *Id.* ¶ 57.

The Complaint does not set forth any facts indicating the Aequita Defendants engaged in any misstatement or misrepresentations. Nor does it plead any facts indicating that they violated the

[2] Judicially noticeable and incorporated by reference as cited in the Complaint at ¶ 48, n.33; ¶ 56, n.42. *See Khoja v. Orexigen Therapeutics*, *Inc*., 899 F.3d 988, 1002 (9th Cir. 2018).

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Lanham Act or any California law or conspired with any other entity to do so. Rather, the Complaint simply pleads that Aequita Pharmacy filled prescriptions for patients received from prescribers. D.I. 1 ¶ 57. This is the valid business of a pharmacy. The facts alleging that Mochi Health utilized Aequita Pharmacy as a dispensing pharmacy also do not establish any wrongdoing. D.I. 1 ¶¶ 73-78.

**D. The California Medical Board Polices CPOM, Determining the Standard of Care**

The Medical Board of California ("Medical Board") is charged with regulating the practice of medicine and protecting consumers in California under the Medical Practice Act (the "MPA"). *See* Cal. Bus. & Prof. Code § 2004. This comprehensive statutory scheme grants the Medical Board the power to set professional standards of conduct and investigate and adjudicate violations (*see id.* § 2220). The Medical Board prosecutes aiding and abetting the unauthorized practice of medicine (*see id.* § 2264); corporate involvement in medical decision-making (*see id.* § 2400); and breaches of standard of care by furnishing prescription drugs without an appropriate prior examination and medical indication. *See id.* § 2242. The Medical Board has even produced a guide regarding its enforcement actions for unlicensed CPOM. RJN, Ex. J. The Medical Board's authority is not confined to physicians, but covers "any individual, partnership, corporation, limited liability company, or other organization" accused of violating the MPA. *Id.* § 2032.

**E. Drug Compounding: An Inherently Personalized Form of Drug-Making**

Contrary to Lilly's efforts to cast compounded medications as "knock-off" drugs, compounding is a legitimate, traditional component of pharmacy practice. It is a "process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual patient." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 360-361 (2002) ("*Western States*"). Compounding addresses patient-specific needs and is prescribed when a doctor determines that one-size-fits-all manufactured drugs are inappropriate to treat the patient. *Id.* While traditionally regulated by the states, Congress amended the Federal Food, Drug, and Cosmetic Act ("FDCA") to add Section 503A in 1997, imbuing the Food and Drug Administration ("FDA") with regulatory oversight of compounding. 21 U.S.C. § 353a ("Section 503A"). Section 503A created an additional regulatory layer over drug compounding; it did not displace state oversight.

Because compounded drugs are meant to serve as an alternative to one-size-fits-all

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

manufactured drugs and allow for "personalized" medications options, Section 503A exempts compounded medications from FDA's new drug approval process because "[r]equiring FDA approval of all [compounded] drug products … would, as a practical matter, eliminate the practice of compounding." *Western States*, 535 U.S. at 369. Section 503A includes parameters to ensure that compounded medications remain a safe alternative for patient care, such as limiting the active pharmaceutical ingredients that may be used to compound. *See* 21 U.S.C. § 353a(b)(1)(A)(i)(II). Section 503A, however, specifically authorizes using an active pharmaceutical ingredient that is a component of a manufactured drug—such as the tirzepatide in Lilly's drug. *See id*.

While Section 503A prohibits compounding what are "essentially copies" of manufactured drugs, it authorizes variations to meet patient need. 21 U.S.C. § 353a(b)(1)(D), (b)(2). FDA gives extensive guidance regarding the variations that compounding pharmacies may make. Indeed, FDA authorizes compounders to make the very modifications that Lilly is complaining about—altering the dosage strength or adding active ingredients. *See id.* § 353a(b)(2). As with all compounded medications, a doctor must determine that the medication is necessary for the patient by issuing a prescription. *See id.* § 353a(a)(2)(A)-(B) (requiring that compounded medications be compounded pursuant to a patient-specific prescription or based on a history of prescriptions for a specific patient).

**F. The California Board of Pharmacy Polices the Practice of Pharmacy**

State pharmacy boards maintain concurrent jurisdiction with FDA to regulate compounding pharmacies. To that end, the California Board of Pharmacy ("Pharmacy Board") enforces the California Pharmacy Practice Act, which, *inter alia*, prohibits pharmacies from engaging in false or misleading advertising (*see* Cal. Health & Saf. Code § 110390), or otherwise committing a deceitful act. *See* Cal. Bus. & Prof. Code § 4301(f). The Pharmacy Board regulates how, when, and which drugs may be compounded. *See* Cal. Code Regs. tit. 16, § 1735.2. The Pharmacy Board can suspend, revoke, or restrict a licensee's practice. *See* Cal. Bus. & Prof. Code § 4300.

**G. Lilly's Claims**

The Complaint asserts four causes of action: (1) unfair competition under the California Unfair Competition Law ("UCL"); (2) false advertising under the California False Advertising Law ("FAL"); (3) false or misleading advertising and promotion under the Lanham Act; and (4) civil

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

conspiracy. Lilly asserts the final cause of action of conspiracy against all Defendants, while the other three causes of action are only against Mochi Health.

## III. ARGUMENT

### A. Lilly Lacks Standing Under the Lanham Act

The predicate for standing under the Lanham Act is that (1) the parties compete, and (2) for Lilly to have suffered from an unfair aspect of that competition. Each is missing here.

#### 1. Lilly Has Not Pled That It and Mochi Health Are Direct Competitors

Lilly is a drug manufacturer. D.I. 1 ¶ 40. Mochi Health is not. As stated in the Complaint, "Mochi Health is a telehealth corporation." D.I. 1 ¶ 48. Lilly's own pleading shows that far from being a drug manufacturer, Mochi Health instead has "'affiliated medical services providers,' who then prescribe medications advertised on Mochi Health's website." D.I. 1 ¶ 48. Lilly's quote is from the "Terms of Use" webpage of the Mochi Health website, which states in full that that "Mochi [Health] provides practice management services to Mochi Medical, P.A., a Florida professional corporation, Mochi Medical CA, P.C., a California professional corporation, and other affiliated medical services providers (collectively, "Mochi Providers"). ***Mochi Providers provide medical services***." D.I. 1 ¶ 48 n.33; RJN A (emphasis added).

It is the Mochi Providers, not Mochi Health, who provide medical services and prescribe medications. *Id.* Notably, Lilly does not allege that Mochi Health manufactures drugs. The reason is simple—Mochi Health does not. Mochi Health is several degrees removed from Lilly (and Lilly's actual competitors): (1) Mochi Health (a telehealth company) provides medical practice management and technology services to the Mochi Providers (2) Mochi Providers (medical doctors) assess, diagnose, and treat patients, which may include prescribing medications; and (3) a pharmacy fills the prescription—whether that be a Lilly-branded drug like Mounjaro® or Zepbound® (*see* D.I. 1 ¶ 11), a competitor drug like Novo's Ozempic®, or any other type of medication.

"[F]or standing pursuant to the 'false advertising' prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club,*

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). "[T]he zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014). "[A]a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id*. at 140 (cleaned up).

Only when the complaint demonstrates that the parties are "direct competitors" can the court presume injury; otherwise, the plaintiff must plausibly allege that "some consumers who bought the defendant's product under a mistaken belief … would have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825-827 (9th Cir. 2011) (cleaned up). A Lanham Act claim must adequately allege that a false advertisement has a proximate relationship that "'is likely to be something very close to a 1:1 relationship between a plaintiff's lost sales and the sales diverted to a defendant." *Thermolife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 U.S. App. LEXIS 5481, *4 (9th Cir. Mar. 2, 2022) (quoting *Lexmark*, 572 U.S. at 139).

*Thermolife* is instructive on what constitutes direct competition, and on the nexus that must be pled in the absence of direct competition. The Ninth Circuit affirmed a grant of a motion to dismiss where two plaintiffs—Thermolife and Muscle Beach—were not direct competitors of the defendant BPI, and could not show proximate causation of any alleged injury "flowing directly" from the alleged false advertising. *Id*. *4-8. Thermolife licensed the use of technology and ingredients for dietary supplements. *Id*. *4. BPI, on the other hand, produced its own dietary supplements. The Ninth Circuit found that because the parties operated on "different level[s]" of the supply chain, they were not direct competitors. *Id*. Thermolife, then, could not presume commercial injury, and it failed to plead "anything like a 1:1 relationship" between alleged lost sales and any "potential sales diverted to BPI" due to the false advertising. *Id.* *4. The Ninth Circuit found that there were many other competing companies in the dietary supplement market. *Id*. *5. Because the market was crowded, the complaint did not plausibly allege that "sales captured by BPI leads to a direct loss of dietary supplements containing Thermolife ingredients." *Id*. *6. The Muscle Beach plaintiff fared no better; while it sold sport nutrition supplements, it "failed to allege any facts that show consumers consider its products to be substitutes with BPI's products," including, for example, evidence of a "customer

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

review stating a preference for one over the other." *Thermolife*, 2022 U.S. App. LEXIS 5481, *7.

Here, no facts in Lilly's Complaint establish Mochi Health as a direct competitor of Lilly. Lilly does not allege that Mochi Health is a drug manufacturer, because it is not. Instead, taking its allegation as true, Lilly only alleges that Mochi Health "*sells* mass-manufactured" drugs. D.I. 1 ¶ 143 (emphasis added). Just as in *Thermolife*, Mochi Health is at a "different level of the supply chain," and the parties are not direct competitors. *Thermolife*, 2022 U.S. App. LEXIS 5481, *4; *see also Vampire Family Brands, LLC v. MPL Brands, Inc.*, No 20-9482, 2021 WL 4134841, *7-8 (C.D. Cal. Aug. 6, 2021) (granting motion to dismiss where there was an insufficient showing of competition between seller of canned agave wine "cocktails" and seller of vodka, because characterizing them as direct competitors just "because both make alcoholic beverages would dramatically expand the 'zone of interest' in which a plaintiff may sue for false advertising under the Lanham Act").

### 2. Lilly Has Not Alleged Any Proximate Relationship Between Its Lost Sales and Ads by Mochi Health

Since the parties are not direct competitors, Lilly would have to identify and plead a proximate relationship between Lilly's lost sales and sales diverted to Mochi Health. *Lexmark*, 572 U.S. at 133 (a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[, which] occurs when deception of consumers causes them to withhold trade from the plaintiff"). A party must allege its "injury by (1) using lost sales data, that is actual market experience and probable market behavior, or (2) creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-05638, 2020 WL 6826487, *4 (N.D. Cal. June 4, 2020) (dismissing Lanham Act claim over alleged falsity that wool shoes were "all natural" because plaintiff failed to allege chain of inferences that customers prefer "all natural products" and that Allbirds captures a larger share of the "all-natural" shoe market because of its alleged false or misleading advertising).

Here, Lilly has failed to plead a single lost sale, much less any proximate relationship between Lilly's lost sales and Mochi Health's advertisements. Lilly has instead generically alleged that that Mochi Health influences "decisions to purchase Mochi Health's tirzepatide product instead of Lilly's FDA approved medicines." D.I. 1 ¶ 179; *see id.* ¶ 183 ("As a direct and proximate result of Mochi

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Health's false and deceptive statements and practices, Lilly has suffered and will continue to suffer significant monetary damages and discernible competitive injury by the loss of goodwill."). It is the doctor's decision to prescribe the appropriate medication and not the patient's decision to purchase whatever medicine they please. Moreover, Lilly's mere conclusory recitation of the Lanham Act elements is insufficient; Lilly fails to plead any actual evidence of lost sales. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("formulaic recitation of the elements of a cause of action will not do.").

Likewise, Lilly failed to plead a chain of inferences showing how defendant's alleged false advertising could harm Lilly's business. As in *Thermolife*, the weight loss medication market is a crowded field, with numerous competing products. Indeed, Mochi Health's website illustrates various medications that a doctor might prescribe a patient, and Lilly's medications are not even listed first. RJN, Ex. E. Lilly has not pled any link on a long chain of inferences to show harm. It has not pled that (1) a consumer came across Mochi Health's website who wanted a Lilly medication, (2) what that patient was actually prescribed, and (3) but for Mochi Health's advertisements, as opposed to the doctor's treatment determination, a Lilly medication would have been prescribed and purchased.

Lilly has failed to plead anything other than mere speculation that Mochi Health's advertisements for Lilly's products entice patients to join Mochi Health only to be prescribed compounded tirzepatide instead. D.I. 1 ¶ 179. The Mochi Providers, not Mochi Health, prescribe medication—whether it be Zepbound, Ozempic, or a compounded tirzepatide—as medical consultations warrant, in the exercise of that doctor's clinical judgment. Lilly's complaint fails to allege any actual lost sales proximately caused by Mochi Health's alleged false advertisements, and only speculates on merely possible scenarios. Thus, Lilly fails to state a Lanham Act claim and its Complaint must be dismissed. *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

### B. Causes of Action I and II Should Be Dismissed Under the Doctrines of Abstention and Primary Jurisdiction

Not only does Lilly want to shut down any advertisements about compounded medications,

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

but Lilly wants to make an end-run around state agencies and shut down Mochi Health, so that the Mochi Providers cannot prescribe compounded tirzepatide medications. The Court should reject Lilly's attempt to assume this governmental role for itself.[3]

**1. The Medical Board Has the Technical and Policy Expertise to Determine the Standard of Care**

In Lilly's UCL claim, Lilly alleges that Mochi Health, an MSO, is somehow practicing medicine, not doing so properly, and competing unfairly with Lilly. For the Court to evaluate and rule on this unfair competition claim, the Court would need to determine: (1) the appropriate standard of care, and (2) what constitutes a corporation engaging in the practice of medicine. *See*, *e.g*., D.I. 1 ¶ 3 (alleging failure to practice "good medicine"). This evaluation requires the specialized expertise of the Medical Board.

Lilly claims Mochi Providers improperly prescribe compounded medications because they fail to conduct an appropriate prior examination and thereby violate the standard of care. D.I. 1 ¶¶ 122-123. Adjudicating what constitutes "appropriate prior examination" and "medical indication" in the context of prescribing medications is a task that specifically rests with the Medical Board. *Med. Bd. of California v. Chiarottino*, 225 Cal. App. 4th 623, 629 (2014) ("[t]he [Medical] Board is specifically charged with enforcement of the Medical Practices Act" including for violations of the provision prohibiting "furnishing prescription drugs without an appropriate prior examination and medical indication"); *see, e.g.*, *Kirchmeyer v. Helios Psychiatry Inc.*, 89 Cal. App. 5th 352, 356 (2023) (investigating a doctor's prescriptions of controlled substances to evaluate whether they were

[3] Because Lilly alleges Mochi Heath engaged in "improper practice of medicine, unfair competition, deception, and false advertising" under California law, Mochi Health's response focuses on the appropriateness of deference to this state's Medical and Pharmacy Boards. D.I. 1 ¶ 13. However, defendant Mochi Medical P.A. is a Florida professional corporation. Unlike California, Florida does not prohibit CPOM by statute or regulation; the Florida Board of Medicine has in fact explicitly confirmed that, "Florida Statutes [do not] prohibit a Florida licensed physician employed by a corporation from practicing in Florida under such an arrangement." RJN, Ex. I at 3. Accordingly, with respect to Mochi Medical P.A., Lilly is effectively asking this Court to assume the functions of not only California regulatory agencies, but also those of Florida and other states' medical and pharmacy boards.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

"medically necessary and within the standard of care"); *Grafilo v. Soorani*, 41 Cal. App. 5th 497, 502 (2019) (same); *Grafilo v. Wolfsohn*, 33 Cal. App. 5th 1024, 1028 (2019) (same).

The law directs courts to abstain from ruling on these issues, so that the Medical Board—which has the relevant technical expertise and investigative powers—can police the practice of medicine. It is well established that the practice of medicine is subject to state police powers, and not the province of federal courts absent serious constitutional concerns. *Oregon v. Ashcroft*, 368 F.3d 1118, 1125 (9th Cir. 2004), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006) ("regulation of medical care" is an area of law traditionally reserved for the state); *Linder v. United States*, 268 U.S. 5, 18 (1925) ("Obviously, direct control of medical practice in the states is beyond the power of the federal government"). A court should abstain from adjudicating a suit that "would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007). Further, under the related doctrine of primary jurisdiction, a court may dismiss a claim that "implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority …." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

Courts abstain when issues "implicate technical or policy determinations usually reserved to an administrative agency." *Shuts v. Covenant Holdco LLC*, 208 Cal. App. 4th 609 (2012). For example, in *Am. Acad. of Emergency Med. Phy. Group, Inc., v. Envision Healthcare Corp.* ("*Envision*"), the Court found that abstention *was not appropriate* where the alleged violations involved a wide-range scheme of "a multi-billion dollar corporation's business structure, contracts, and practices" unrelated to an expertise of the agency. No. 22-CV-00421-CRB, 2022 WL 2037950, *7 (N.D. Cal. May 27, 2022). The *Envision* Court found that the violations were not limited to particular medical practices "as defined in the Medical Practice Act," but instead involved a wide-ranging schemes such as violating "laws on fee splitting, kickbacks and other practices," "unlawfully paying consideration for the retention of emergency department contracts," and "unlawfully restraining the practice of medicine by requiring doctors to enter into restrictive covenants that restrict their employment." *Envision*, 2022 WL 2037950, *10.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Here, the alleged unfair competition pertains to the Mochi Providers' prescribing practices and the determination of who may hold themselves out as a doctor. D.I. 1 ¶ 163. This is precisely the type of policy determination requiring technical expertise that the law entrusts to the Medical Board. This is not a situation where parties like Mochi Health are running rampant without oversight; in addition to doctors, the Medical Board's authority covers "any individual, partnership, corporation, limited liability company, or other organization" accused of violating the MPA. *Stiger v. Flippin*, 201 Cal. App. 4th 646, 653 (2011) (citing Cal. Bus. & Prof. Code § 2032).

Finally, Lilly seeks injunctive relief that would require the Court to monitor Mochi Medical, P.A. and Mochi Medical CA, P.C.—and their doctors, including Director and CEO Dr. Rana Ahmad (*see id.* ¶ 56, nn.45, 46; RJN, Exs. C, D)—to ensure they are meeting the standard of care and are not unduly influenced by lay entities. This type of "long-term monitoring process" would "place a tremendous burden" on the court and drag it "into an area of complex economic or similar policy, making equitable abstention appropriate." See *Shamsian v. Dep't of Conservation*, 136 Cal. App. 4th 621, 641 (2006) (cleaned up) (citation omitted); *see also Alvarado*, 153 Cal. App. 4th at 1306.

Here, the Court should abstain as directed by law, and defer to the Medical Board. Allowing the first cause of action to proceed would effectively grant Lilly the ability to prosecute a CPOM claim—an outcome that would turn the very public policy underlying corporate practice restrictions on its head. In other words, it would permit a for-profit pharmaceutical company to place barriers on a doctor's practice of medicine.

#### 2. The Pharmacy Board Has the Technical and Policy Expertise to Determine False and Misleading Advertisements

The Court should further abstain from adjudicating the second cause of action because doing so would interfere with the Pharmacy Board's technical and policy expertise. Lilly asks the Court to enjoin Defendants from making supposedly false statements related to the safety and efficacy of compounded tirzepatide. D.I. 1 at 51.[4] However, the Pharmacy Board's regulations govern what

[4] Seeking an order enjoining Defendants from "Marketing, distributing, dispensing, or otherwise making available to consumers Defendants' compounded tirzepatide," "Citing Lilly's clinical testing to support the safety and effectiveness of Defendants' unapproved compounded tirzepatide," "Engaging in any deceptive acts," and "Making false and deceptive statements about the nature and

constitutes false and misleading advertisements for drugs. *See* Cal. Health & Saf. Code § 110390. Enjoining Defendants from making "deceptive" statements about compounded tirzepatide's safety and efficacy, as Lilly requests, would place this Court in the awkward position of having to continually monitor the Pharmacy Board's decisions to ensure congruence with agency expertise. D.I. 1 at 51. Lilly's injunctive relief would invade the province of the Pharmacy Board and saddle the Court with regulatory burdens. *See* Cal. Bus. & Prof. Code § 4300. As such, this Court should abstain.

### C. Lilly's Claims Fail to Meet Pleading Requirements

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted and cleaned); *see also Twombly*, 550 U.S. at 555 (2007). A court need not accept as true "conclusory allegations that are contradicted by documents referred to in the complaint" or "legal conclusions … cast in the form of factual allegations." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Claims relying on allegations of "a unified course of fraudulent conduct" must be pled with particularity under Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the … [UCL]") (citation omitted).

Here, Lilly's claims sound in fraud, alleging that Defendants engaged in a unified course of fraudulent conduct by selling medications based on advertising that is "deceptive," "fraudulent," "untrue, and misleading." D.I. 1 ¶¶ 162, 164, 170. However, Lilly fails to allege that Defendants' statements are false or misleading, much less plead fraud with the specificity required by Rule 9(b). Instead, Lilly relies on conclusory contentions of fraud, frequently on "information and belief," either

---

source of Defendants' compounded tirzepatide."

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

because it failed to diligently investigate facts available to the public, or because it deliberately chose to omit facts undermining its Complaint.

**1. Lilly Fails to Plead False Advertising and Lanham Act Claims (Causes of Action II and III)**

Lilly asserts separate causes of action under both the FAL and the Lanham Act based on the same alleged false advertisements. D.I. 1 ¶ 170 (identifying same five bases). "In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and the UCL] are substantially congruent to claims made under the Lanham Act." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. 12-03762, 2014 U.S. Dist. LEXIS 17376, *3 (N.D. Cal. Feb. 11, 2019) (cleaned up and citations omitted); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (subjecting claims under the UCL and Lanham Act to the same analysis). Under both claims, "[p]laintiffs must allege that [d]efendants' representations are likely to deceive a reasonable consumer." *Shaker v. Nature's Path Foods, Inc.*, No. 13-1138, 2013 U.S. Dist. LEXIS 180476, *3 (C.D. Cal. Dec. 16, 2013). Thus, Mochi Health addresses both causes of actions together, as both fail for the same reasons.

A plaintiff who asserts a claim under the Lanham Act must establish that: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod*, 108 F.3d at 1139 (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943-946 (3d Cir. 1993)).

The Lanham Act only provides relief for false or misleading representations of ***fact***. If a statement claimed to be false constitutes mere "puffery," then they are not actionable. *Cook, Perkiss,*

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*& Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Puffery "is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod*, 108 F.3d at 1145. "[T]he determination of whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Lilly groups the alleged false advertisements into five groups. For clarity, each group will be addressed separately. In total, Lilly's claims fail because Lilly has failed to identify a single actually false statement, and it cannot show actual or likelihood of deception, or that the deception is material. Finally, Lilly has not pled any actual injury.

**a. Lilly's Medication Source Claims Are Not a Basis for Relief**

Lilly argues that Mochi Health "misrepresents the source of its Tirzepatide drug" through the website by deceiving customers into believing they will receive Lilly's "FDA-approved medications." D.I. 1 ¶¶ 126, 130. But throughout this section of its Complaint, Lilly has failed to point to a single false statement. D.I. ¶¶ 126-132. Because the cited statements on Mochi Health's website are literally true, Lilly's claim cannot stand unless it can show that its website is "likely to mislead or confuse consumers." *Southland Sod*, 108 F.3d at 1139 (citing *Castrol*, 987 F.2d at 943-46). Lilly cannot do so.

To begin, Lilly cherry-picks information from the website, but even that information is true. For example, Lilly states that Mochi Health includes information and images about Mounjaro® and Zepbound®, medications made by Lilly. D.I. 1 ¶ 26. This is true information, and Lilly has not argued that that the website falsely presented information or misrepresented the medication. Nevertheless, Lilly suggests that this is misleading because Mochi Health caused patients to believe that they would receive Lilly's medications, but actually provided said patients with compounded drugs. *See id.* ¶ 130-131. But far from showing that Mochi Health is likely to deceive its customers, Lilly cites ample proof that consumers know exactly what they are signing up for. The Complaint references posts on the Internet forum Reddit.com where users explicitly state that they expected to receive compounded

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

drugs when joining Mochi Health, and does not cite any user who expected to receive Lilly's medications and did not.[5]

Remarkably, Lilly feels it appropriate to make categorial and bold statements like "nearly all Mochi Health customers" are interested in Lilly's medications and get something else, but it can only do so "on information and belief" because Lilly has not identified a single instance of actual confusion or deception. The Court is not compelled to accept Lilly's outlandish and unsupported allegations as true—they are conclusory, unwarranted deductions of fact that are born from unreasonable inferences. *See Colony Cove*, 640 F.3d at 955; *Sprewell*, 266 F.3d at 988.

**b. Lilly's Safety and Effectiveness Theory Is Not Actionable**

Here, Lilly is arguing with the federal regulatory scheme that authorizes pharmacies to use active pharmaceutical ingredients, like tirzepatide, that are a "component of a drug approved by [FDA]." 21 U.S.C. § 353a(b)(1)(A)(i)(II). But, Mochi Health only provides the platform such that doctors can choose to prescribe compounded tirzepatide-based medication if needed. Advertisements about compounded medications, including those made using tirzepatide, are permissible. *See Western States*, 535 U.S. at 377 (invalidating the advertising ban on compounded medications as unconstitutional).

i Mochi Health's Tirzepatide Study Citations Are Not Literally False

Paragraph 134 of the Complaint references two different websites and confuses what is shown on each. First, Lilly cites to the joinmochi.com/medications webpage, which has information about Lilly's Mounjaro® and Zepbound® products, along with an "expected results" tab showing the results of the SURMOUNT trial. D.I. 1 ¶ 134. As Lilly must admit, these are references to Lilly's own studies, and they are not false. Second, Lilly cites to a Mochi Health Blog post about the

[5] *See, e.g.*, D.I. 1 ¶ 10 n.1; RJN, Ex. F (citing and incorporating by reference a Reddit post titled "Tirzepatide + Niacinamide (Mochi)," where the user claims they "Went to order a refill of compounded tirzepatide"); ¶ 103, n.96; RJN, Ex. G (citing and incorporating by reference a Reddit post where a user states that Mochi Health was "no longer using Aequita as a compounding pharmacy]; ¶ 129, n.114; RJN, Ex. H (citing and incorporating by reference a Reddit post where a user states that they "went the compounded route" with Mochi Health because they could not find Wegovy®).

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

SURMOUNT and SURPASS trials for tirzepatide, the active pharmaceutical ingredient in Lilly's manufactured drug. *Id*. n.121. Plaintiff alleges that these articles falsely communicate that Mochi Health's compounded medications have been tested and proven to function as advertised. *Id*. ¶ 135. Not so.

Plaintiff leaves out necessary context for the blog post that demonstrate that the statements are not literally false on their face. *Dyson, Inc. v. Garry Vacuum, LLC,* No. 10-01626, 2011 U.S. Dist. LEXIS 165514, *31-32 (C.D. Cal. Jan. 4, 2011) (dismissing claims because even though the court assumes "the truth of defendants' allegations, this does not obviate the need for defendants to plead facts that 'state a claim to relief that is plausible on its face'" and the alleged misrepresentation was not false when considered in its "'full context'") (quoting *Iqbal*, 556 U.S. at 678 and *Southland Sod*, 108 F.3d at 1139). Specifically, the cited studies are clearly and explicitly discussing tirzepatide alone—not a compounded tirzepatide medication. D.I. 1 ¶ 134, n.121; RJN, Ex. K. Indeed, there can be no confusion on this issue because the blog does not even mention a compounded tirzepatide medication. *Id.* Lilly fails to allege how Mochi Health's citations to tirzepatide studies are literally false.

ii Lilly Failed to Plead Consumer Confusion

Since these statements are not false on their face, as shown above, Lilly is forced to proceed on a theory that the statements, while true, are misleading and creates a "false impression." D.I. 1 ¶ 135. Stated differently, Lilly asserts that the summarization of the tirzepatide data is allegedly misleading since compounded medication is also advertised on the joinmochi.com website. *Id*. Plaintiff, however, has not pled any supporting factual allegations establishing that consumers are "actually" confused or deceived by the website or statements, as required for the "true but misleading" variation of false advertising claims. *Southland Sod*, 108 F.3d at 1139; *see also Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 (D.N.J. 1998) ("A plaintiff can maintain an action under the Lanham Act even 'where the advertisements are not literally false' so long as there is evidence of actual consumer confusion or deception").

Lilly has failed to adequately allege "how" or "why" citations to or summaries of data regarding tirzepatide, the active pharmaceutical ingredient, would lead a reasonable consumer into

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

ignoring the plain text of the studies and instead believe that the studies pertain specifically to other compounded medications that are not listed on the same blog post. Lilly simply asks this Court to assume—without a survey or other credible basis—that the reasonable consumer will automatically make this leap, but courts cannot accept such implausible inferences even at the motion to dismiss stage. *See Roussel Corp.*, 23 F. Supp. 2d at 475–80 (reasoning that courts need not make implausible leaps in logic in inferring effects on consumers that are not directly tied to the claimed false statements); *see also FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 455 (6th Cir. 2024) (explaining that when considering the pleaded facts in a light most favorable to the plaintiff, only "reasonable inferences" are drawn in the plaintiff's favor). Because Lilly has failed to plead any facts establishing consumer confusion from Mochi Health's citations to studies about tirzepatide, its claims fail.

iii FDA's Expertise Is Needed to Evaluate Mochi Health's Statements

Lilly's claims related to compounded medication safety and effectiveness are precluded. It is well-established that the FDCA contains no private right of action; only FDA may bring actions to enforce or restrain alleged violations of the FDCA. *See* 21 U.S.C. § 337(a) (instructing "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States"). Thus, a Lanham Act claim is precluded where its adjudication would "directly conflict[] with [FDA]'s policy choice" or otherwise "undermin[e] [FDA's] judgment." *Pom Wonderful, LLC v. Coca-Cola Co.*, 573 U.S. 102, 120 (2014). "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 175 F.3d 725, 731 (9th Cir. 1999) (citations omitted); *Sandoz Pharma. Corp. v. Richardson-Vicks*, 902 F.2d 222, 231(3d Cir. 1990) ("[W]hat the [FDCA] … do[es] not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of th[is] Act [ ] or [its] accompanying regulations.").

Courts have recognized that false advertising claims are precluded where plaintiff's factual allegations require FDA's "particular expertise" to resolve. *See Allergan USA Inc. v. Imprimis Pharm., Inc.*, No. 17-1551, 2018 U.S. Dist. LEXIS 226392, *21 (C.D. Cal. Apr. 30, 2018) ("[C]laims

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

regarding compliance with federal and state regulations dealing with requirements 'as to safety and … identity and strength, and … quality and purity characteristics' as well as contamination, quality control, sterility, and testing are likely precluded by the FDCA … Lanham Act claims that require [ ] FDA's particular expertise or rulemaking authority are precluded."). In other words, courts readily find FDCA preclusion when a plaintiff's false advertising claim cannot be resolved through simple binary factual determinations. *See Allergan USA*, 2018 U.S. Dist. LEXIS 226392, *7 ("[C]laims that directly implicate [ ] FDA's rulemaking authority, are not binary factual determinations, or involve an issue on which [ ] FDA has taken positive regulatory action are all likely precluded by [ ] FDA."); *cf. Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 501 (1st Cir. 2022) (finding Lanham Act claims were not precluded when the claim in that case merely required the court make a binary determination "whether a particular drug appears" on one of two published lists, and thus no FDA expertise was implicated).

Plaintiff claims that the website's citations to tirzepatide data are inappropriate when applied to compounded medications because there are differences in the combinations of other ingredients, and there are no studies regarding the specific compounded medications. D.I. 1 ¶ 135. Although Mochi Health is not a compounder, the FDCA sets forth the active pharmaceutical ingredient requirements for compounders and specifically authorizes compounders to utilize active pharmaceutical ingredients that are "a component of a drug approved by [FDA]." 21 U.S.C. § 353a(A)(b)(1)(A)(i)(II). Accordingly, tirzepatide, the active pharmaceutical ingredient in Lilly's manufactured drug, can be used in compounded medications following a doctor's determination that the medication is necessary for treatment. Plaintiff does not allege that these compounded medications do not contain tirzepatide; nor does Lilly allege that the compounded tirzepatide is different than the active pharmaceutical ingredient in the cited articles.

Here, Plaintiff asks this Court to rule on the open-ended question of whether it is appropriate to reference data about tirzepatide when discussing certain types of tirzepatide-containing compounded medications in advertising. But FDA has oversight of compounded drug advertisements. *See* 21 U.S.C. § 352(bb) (prohibiting "the advertising or promotion of a compounded drug [if it] is false or misleading in any particular."). FDA has not promulgated regulations or issued guidance

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

interpreting Section 352(bb)—there is certainly no FDA guidance as to what types of studies compounders can cite in advertisements regarding the active ingredients.

Thus, the question of falsity requires an open-ended determination only suited for FDA. FDA must weigh in—and has not—on whether it is scientifically appropriate for the joinmochi.com website to reference data regarding tirzepatide when advertising compounded tirzepatide medications. These issues are open-ended questions that are squarely in the exclusive province of FDA. *See Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. 17-1551, 2017 U.S. Dist. LEXIS 223117, *18–20 (C.D. Cal. Nov. 14, 2017) (reasoning that claims that are not binary factual determinations but rather involve open-ended determinations are precluded). Because Lilly's Lanham Act claim requires nuanced, open-ended determinations by FDA to establish falsity, Plaintiff's claims are precluded and therefore must fail.

iv Mochi Health's "Best" Medication Statements Are Opinion/Puffery

Plaintiff alleges that the generalized statement "Best Weight Loss Treatment of 2025" on a Mochi Health advert is untrue. D.I. 1 ¶ 136. According to Plaintiff, there are no clinical studies showing the safety and effectiveness of the displayed compounded tirzepatide. *Id.* ¶ 137. First of all, this advert does not even reference Lilly, its products, or tirzepatide. Moreover, Mochi Health's statements are nothing more than puffery and are akin to the type of statements that courts have found to be non-actionable opinions. *See, e.g.*, *Silver v. BA Sports Nutrition, LLC*, No. 20-CV-00633-SI, 2020 U.S. Dist. LEXIS 99320, *4 (N.D. Cal. June 4, 2020) (finding that product claims of "Superior Hydration" and "More Natural Better Hydration" were too vague to be actionable); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498 (5th Cir. 2000) ("Better Pizza, Better Ingredients" found to be non-actionable puffery); *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x778, 789 (10th Cir. 2006) (finding defendants statements of "best practices and high-quality care to be merely sales puffery that cannot form the basis of a Lanham Act claim").

Further, Lilly's claims are precluded because establishing the alleged falsity requires FDA's scientific expertise. Each of Mochi Health's challenges warrants dismissal at the 12(b)(6) stage.

//

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**c. Plaintiff's Personalization Claims Fails to Identify a False Statement**

Plaintiff's "personalization" claims are an attack on the Mochi Providers' ability to advertise that they meet with patients and prescribe personalized treatment plans—just as every other doctor-patient encounter. According to Lilly, because some patients are allegedly prescribed the same compounded medication, there is nothing "personalized" about the services. D.I. 1 ¶ 149. This makes no sense. Doctors regularly can and do prescribe the same medication for patients that have similar needs. For example, treatment plans for ear infections do not fail to be "personalized" because multiple patients are prescribed the same antibiotic. Here too, patients meet with Mochi Providers to determine the best plan for them, personally. There is nothing false about these statements, and the Court cannot police these doctor-patient interactions that are by their nature extremely sensitive and personalized. In the absence of a false statement of fact, Lilly's personalization Lanham Act allegations cannot survive a motion to dismiss.

i Mochi Health Advertises Actually Personalized Treatment Plans, So Lilly Must Plead Consumer Confusion, But Has Failed to Do So

According to Lilly, Mochi Health's classification of its plans as "personalized" is misleading because Mochi Health's customers may be prescribed "mass-produced" compounded medication. D.I. 1 ¶ 149. Instead, as Lilly acknowledges, Mochi Health specifically advises consumers of a "customizable treatment plan." D.I. 1 ¶ 145. Lilly does not allege that Mochi Health advertises medications that may not be prescribed, or, that consumers are confused about which medications they may be prescribed in their "[c]ustomized treatment plan." *Id.* Lilly pleads no facts that any consumers thought their treatment plan was not "personalized." *See Roussel Corp.*, 23 F. Supp. 2d at 475–80 (reasoning that courts need not make implausible leaps in logic in inferring effects on consumers that are not directly tied to the claimed false statements). Because Lilly has failed to plausibly plead that Mochi Health's website featuring "customized treatment plans" or "weight care designed for you" misleads anyone, Plaintiff's claims fail on their face for not meeting Fed. R. Civ. P. 8(a) pleading standards.

//

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

ii Alternatively, Mochi Health's "Personalization" Statements Are Non-Actionable Puffery

Mochi Health's statements that treatments are "personalized" (D.I. 1 ¶ 149) are "opinion statements, not statements of facts" and thus not actionable under the Lanham Act or UCL. *Coastal*, 175 F.3d at 731; *see also Silver*, 2020 U.S. Dist. LEXIS 99320, *14 (dismissing Plaintiff's claims as the statements were "general, vague statements about product superiority rather than a misdescription of a specific or absolute characteristic of the product").

The Sixth Circuit's reasoning in *FedEx* is persuasive on this point. There, plaintiff brought Lanham Act claims against defendant's statements regarding the alleged "collapsing" of plaintiff's business model, the "soaring" default rate, and plaintiff's alleged "financial distress." *FedEx*, 97 F.4th at 456–57. The Sixth Circuit analyzed each of these statements and found them to be untestable or vague puffery, reasoning that there was no way to measure or reasonably interpret the statements as objective facts. *Id*.

Here, the same is true of Mochi Health's statements. The Mochi Provider's treatment plans, which may include compounded medications are "personalized." They are not available "off-the-shelf." There is no way for this Court to empirically test or measure what it means for a treatment plan or drug to be "personalized." Therefore, the personalization statements are non-actionable puffery; as non-actionable puffery, they cannot be used to articulate a false statement required for a viable Lanham Act or UCL claim. As such, Lilly's personalization theory fails to state a claim under the Lanham Act or UCL, and results in dismissal under 12(b)(6).

**d. Mochi Health's Statements Regarding Aequita Pharmacy Are Not False and Are Not a Commercial Advertisement**

Plaintiff relies on Mochi Health's statement in a letter sent to existing customers that "existing prescriptions" were being sent to a different pharmacy because "Aequita informed us [Mochi Health] that they voluntarily stopped operations." See D.I. 1 ¶¶ 150-151. This statement is not actionable for several reasons. First of all, this is not a commercial advertisement and cannot form the basis of a Lanham Act or UCL claim. *See Coastal*, 173 F.3d at 734-35 (identifying criteria for commercial advertisements, including that the parties are competitors, and the purpose of the speech is to influence purchasing decisions); *Southland Sod,* 108 F.3d at 1139. Second, Mochi Health's statement

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

is not false. The Washington State agency's cited statement does not contradict Mochi Health's statements because Aequita Pharmacy did voluntarily close on March 11 before the limited stop service issued on March 12. *See* D.I. 1 ¶ 151, n.134; RJN, Ex. L (setting forth the dates). Finally, Lilly has not pled a single, verifiably false statement of fact regarding Mochi Health's statement concerning Aequita Pharmacy or its dealings with regulatory requirements at the time the alleged compliance statements were made. *See Dial A Car v. Transp., Inc.*, 82 F.3d 484, 489 (D.C. Cir. 1996) (requiring an unambiguous clear interpretation from the appropriate regulatory authority at the time the statements were made to establish falsity). Because no such determination was made at the time of Mochi Health's statements about Aequita Pharmacy, these statements are non-actionable opinions. *See Coastal*, 173 F.3d at 731-32 (finding that regulatory compliance statements are nothing more than opinion statements that are not actionable under the Lanham Act). Accordingly, Lilly cannot rely on them for its claims.

**e. Mochi Health's Statements Regarding Dr. Myra Ahmad Are Literally True and Not Misleading**

California law expressly permits Dr. Myra Ahmad, a medical school graduate (RJN, Ex. B), to refer to herself as a "doctor" or "physician" and use the terms "Dr." and "M.D." Bus. & Prof. Code § 2054(b). Mochi Health's representations about Dr. Myra Ahmad are factually true and legally appropriate, and therefore, are not misleading.

**f. Lilly Failed to Plead Materiality**

The materiality factor of the *Southland Sod* test inquires into whether *the deception* at issue is material to consumers. *Southland Sod,* 108 F.3d at 1139. Therefore, Lilly is required to include allegations that the statements on the Mochi website is "what influences consumer purchasing decisions related to [the defendant's] challenged advertisements." *Intuit Inc. v. HRB Tax Grp., Inc.*, No. 24-00253, 2025 U.S. Dist. LEXIS 76781, *21-22 (N.D. Cal. April 22, 2025). An allegation of materiality appears only a single time in the Complaint in a recitation of the claim element: "Mochi Health has made materially false or misleading descriptions of fact." D.I. 1 ¶ 179. In *Intuit*, the Court rejected arguments that adverts making consumers "believe they will automatically receive a service valued by consumers … that is not actually included" rises to an allegations of materiality when there

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

is no allegation of "any other facts indicating that consumers specifically make their purchasing decisions based upon the allegedly" missing feature. *Intuit*, 2025 U.S. Dist. LEXIS 76781, *26-27. Here, there is nothing more than a conclusory allegation of materiality that need not be accepted as true. Absent actual facts supporting materiality, Lilly's false advertising claims must be dismissed.

**g. Lilly Failed to Plead Injury or Harm**

Lilly has failed to allege that it suffered any actual injury or harm. Under the FAL and UCL, standing is restricted to those "who 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) ("Injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'") (citation omitted and cleaned up). The California Supreme Court has held that "a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009); *Mosafer Inc. v. Broidy*, 2022 U.S. Dist. LEXIS 21001, *6 (C.D. Cal. Feb. 4, 2022), *aff'd*, 2023 U.S. App. LEXIS 31757, 2023 WL 8295921 (9th Cir. Dec. 1, 2023) ("fraudulent-prong UCL or FAL plaintiff must allege they 'lost money or property as a result of' the false or fraudulent statements or conduct at issue."); *Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1096–97 (C.D. Cal. 2017) (dismissing complaint where lost sales or damage to reputation not adequately explained).

Lilly has not alleged loss of money or sales as result of the adverts on Mochi Health's website other than its conclusory claim of "monetary damages." D.I. 1 ¶ 183. Instead, the Complaint speculates generally that "Defendants' conduct" causes harm to Lilly's "brand and customer goodwill" because consumers "***may*** conclude that tirzepatide is ineffective" and "***may*** even draw unwarranted conclusions about the safety and effectiveness" of Lilly's products. D.I. 1 ¶ 158 (emphasis added). In other words, Lilly's claims are based on harm that is only "conjectural or hypothetical," which is not actionable under the FAL. *Kwikset*, 51 Cal. 4th at 322.

Further, as argued above, the Complaint does not plead "lost sales data" or "a chain of inferences" to establish injury and standing under the Lanham Act. *Allbirds*, 2020 WL 6826487, *4.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**2. Lilly Failed to Plead Unlawful, Unfair, or Fraudulent Acts Under the UCL**

Lilly alleges that Mochi Health violates California's Unfair Competition Statute (CBPC § 17200) by engaging in the unlawful CPOM as a non-professional entity. Cal. Business & Professions Code §§ 2052, 2400; *see also Cal. Ass'n of Dispensing Opticians v. Pearle Vision Ctr, Inc.*, 143 Cal. App. 3d 419, 434 (1983) ("The confidential health care relationship requires the professional's undivided responsibility and freedom from commercial exploitation."). While Lilly makes much of the alleged corporate structure and supposed control in the Complaint (see D.I. ¶¶ 48-63), this cause of action lays bare what this case is truly about—the sale of compounded tirzepatide. *Id.* ¶ 163 (bulleted allegations of unlawful prescription practices). The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. Lilly fails to plead under any of these three prongs.

**a. Lilly Failed to Adequately Plead Unlawfulness**

A business practice is "unlawful" under the UCL if it violates an underlying state or federal statute or common law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Lilly includes four bullet-point summaries of what it claims are "unlawful" activities, but does not specify what underlying law or factual allegation it relies upon for its claim. D.I. 1 ¶ 163. Mochi Health is left to guess as to what laws and allegations in the complaint support Lilly's claims.

First, for example, Lilly alleges Mochi Health is "Unlawfully engaging in and aiding and abetting the unlawful and unlicensed practice of medicine by corporations and unlicensed persons within the State of California and other states." D.I. 1 ¶ 163. Rather than provide factual details, Lilly relies on conclusory allegations that Mochi Health exhibits "undue influence and control" over the Mochi Providers. D.I. 1 ¶¶ 64-71. But the conduct Lilly alleges is Mochi Health advertising physician job postings on behalf of "Mochi Medical" (*id.* ¶¶ 66-68), "provid[ing] diagnostic protocols," and a "custom built" electronical medical records system (*id.* ¶¶ 69-70). These assertions fail to meet the *Twombly*/*Iqbal* plausibility standard; even assuming their truth, these "facts" do not demonstrate unlawful practice of medicine or undue influence or control over medical professionals. Mochi Health is legally permitted to provide administrative and business support to medical providers. *Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504, 517 (2015) (finding no violation of CPOM where

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

management company handled tasks including the medical practice's marketing, billing, collections, and accounting, and did not exercise control over the doctor's practice of medicine).

Paragraph 163's second and third bullets allege Mochi Health unlawfully prescribes medication by modifying formulation or dosages, or adding or changing active pharmaceutical ingredients to the medication, without an appropriate prior examination from a doctor or without medical need. D.I. 1 ¶ 163. Lilly's claims imply that compounding certain ingredients with tirzepatide is unlawful, and thus impermissibly pleads "veiled allegations of an FDCA violation" that must lead to the dismissal of its claim because it is precluded. *Argueta v. Walgreens Co.,* 760 F. Supp. 3d 1028 (E.D. Cal. 2024).

Additionally, the Complaint never explains how Mochi Health influenced or controlled the medical decisions of these doctors, nor does it detail why any prescribing doctor's actions were based on inappropriate medical examinations. Lilly makes no averment as to "'the who, what, when, where, and how' of the misconduct charged." *Vess,* 317 F.3d at 1106 (citation omitted and cleaned up). To state a claim under the unlawful prong of the UCL, "a plaintiff must … plead with particularity how the facts of this case pertain to that specific statute." *Mencia-Montes v. Fit Foods Distribution, Inc.*, No. 24-01768, 2025 U.S. Dist. LEXIS 78649, *13 (N.D. Cal. 2025).

Instead, Lilly, a drug manufacturer and lay entity, inappropriately speculates without explanation that there could be "no medical reason to change" the ingredients in a compounded medication other than money. *Id.* ¶¶ 111-112. But Lilly asserts no facts demonstrating that Mochi Health compelled licensed professionals to set aside their independent professional judgment and require them to prescribe certain formulations of compounded medications. Rather, Lilly only identifies legitimate forms of permissible administrative and management support that Mochi Health is allowed to provide to medical practices, so that doctors can focus on treating patients. Lilly's Complaint allegations that Mochi Health unduly exercises control over the doctors' prescribing or compounding practices are not supported by genuine factual assertions, but are instead only "legal conclusions … cast in the form of factual allegations"—which the Court does not have to accept as true. *Colony Cove*, 640 F.3d at 955.

For the fourth bullet in paragraph 163, Lilly claims that Mochi Health is "[u]nlawfully holding

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Ms. Ahmad as a doctor without a valid license" but ignores that Dr. Myra Ahmad is a medical school graduate and is therefore legally entitled to call herself a doctor. As argued above, California law permits Dr. Myra Ahmad, a medical school graduate (RJN, Ex. B), to refer to herself as a "doctor" or "physician" and use the terms "Dr." and "M.D." Bus. & Prof. Code § 2054(b). Thus, Mochi Health's representations about Dr. Ahmad are factually and legally true. Lilly therefore fails to plead the unlawful prong of the UCL.

**b. Lilly Failed to Adequately Plead Unfairness**

Other than smattering the word "unfair" in with its "unlawful" allegations, Lilly does not make any factual allegations supporting the "unfair" prong of the UCL. As a purported competitor, rather than an aggrieved customer, there are three possible predicates for an unfair competition claim: "conduct that threatens [1] an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187.

Lilly does not plead that Mochi Health violated antitrust law, or that its conduct is comparable to violating antitrust law, or that it otherwise threatens competition. Lilly cannot plausibly make any such allegations because (unlike Lilly) Mochi Health does not hold any significant market share in the weight-loss drug space. Likewise, Lilly does not allege that Mochi Health significantly threatens or harms competition. Mochi Health is not a competitor of Lilly's and Lilly does not allege any specific harm or threat to Lilly's business or competition in the marketplace. Cases finding any such "significant threat or harm" to competition involve facts, for example, where a party tortiously interfered with another party's contract, directly and significantly affecting competition. See *Cent. Valley Med. Grp., Inc. v. Indep. Physician Assocs. Med. Grp., Inc.*, No. 19-404, 2019 U.S. Dist. LEXIS 124388, *7-8 (E.D. Cal. 2019). Lilly makes no such allegation.

**c. Lilly Failed to Adequately Plead Fraud**

As argued above, the Complaint fails to plead a cause of action under the FAL or Lanham Act. The fraud prong of the UCL is subject to the same analysis as these causes of action. *See Kwan Software*, 2014 U.S. Dist. LEXIS 17376, *4; *Cleary*, 30 F.3d at 1263. For the same reasons that Lilly's FAL and Lanham Act claims fail, Lilly's unfair fraud prong of the UCL must fail.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**d. Lilly Failed to Adequately Allege Injury in Fact.**

Even if Lilly properly pleads one of the three UCL prongs (which it does not), it must have "suffered injury in fact" and "lost money or property as a result of" Defendants' wrongful conduct to have standing under the UCL. Bus. & Prof. Code, § 17204. As argued above, Lilly does not plead that it suffered injury in fact. Accordingly, Lilly has no standing to bring a UCL claim.

**3. There is No Actionable Conspiracy Claim (Cause of Action IV)**

**a. Conspiracy Cannot Stand Alone As a Cause of Action, or Based Upon UCL or Lanham Act Violations**

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–511 (1994). For a party "to have a valid civil conspiracy cause of action, there must be another tort" upon which to base its conspiracy claim. *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997). Courts regularly dismiss conspiracy when alleged as a standalone cause of action. *See, e.g.*, *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003); *McColm v. Anber*, 06-7369, 2006 WL 3645308, *8 (N.D. Cal. Dec. 12, 2006); *Sihler v. Fulfillment Lab*, Inc, 20-01528, 2020 WL 7226436, *10 (S.D. Cal. Dec. 8, 2020).

A claim under the UCL is not a tort, and thus cannot support a conspiracy cause of action. *See Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371, 304 P.3d 163, 167 (2013) ("an action under the UCL 'is not an all-purpose substitute for a tort"). Similarly, a claim under the Lanham Act is not a tort. *See Halicki v. United Artists Commc'ns, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987) (Section 43(a) of the Lanham Act is not intended to be "a federal statute creating the tort of misrepresentation"). Accordingly, a claim under the UCL or Lanham Act cannot be the basis for a conspiracy cause of action. *See Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 959 (D. Ariz. 2020) ("a claim under the Lanham Act is not a tort" and thus cannot support a conspiracy claim under Arizona's analogous civil conspiracy doctrine); *FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1138 (D. Or. 2012) ("The Lanham Act false advertising claim will not support the civil conspiracy claim" under Oregon's analogous civil conspiracy doctrine);

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 787 (N.D. Tex. 2008) ("claim under the Lanham Act is not a tort").

Here, Plaintiff's conspiracy claim is premised on alleged violations of the UCL and Lanham Act. D.I. 1 ¶ 187 ("Defendants entered into a common plan and agreement and acted in concert to unlawfully make, prescribe, and sell compounded tirzepatide drugs in violation of the California Unfair Competition Law and the Lanham Act.") Because claims under the UCL or the Lanham Act are not torts, Plaintiff's fourth cause of action for civil conspiracy must be dismissed. Absent the conspiracy claim, the Complaint does not state a cause of action against Mochi Medical CA P.C., Mochi Medical P.A., Aequita Pharmacy, LLC, and Aequita Corporation.[6] Accordingly, these Defendants must be dismissed from the action.

**b. Alternatively, Lilly's Conspiracy Claim Should Be Dismissed As It Alleges That Multiple Defendants Comprise a Single Enterprise**

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

"[A]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *AccuImage Diagnostics*, 260 F. Supp. 2d at 947; *see also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) (a parent and its wholly owned subsidiary cannot conspire with each other because the notion of an "agreement" between them lacks meaning).

Plaintiff appears to allege that all or some of the Defendants constitute a single enterprise. *See* D.I. 1 ¶¶ 52-56 (alleging Dr. Myra Ahmad and Mr. Chaibi, through Mochi Health, "directly and indirectly control … Mochi Medical" and "exert undue control or influence over each of the Defendants"); ¶ 23 (alleging Aequita Corporation and Aequita Pharmacy "function as a single enterprise"). Because one cannot conspire with an entity it is wholly owned or controlled by, the Court should strike the fourth cause of action pursuant to Rule 12(f).

[6] Additionally, the Complaint fails to allege that the Aequita Defendants engaged in any misstatement or misrepresentations of any kind. Nor does it contain any facts indicating that the Aequita Defendants violated the Lanham Act or any California law.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

## IV. CONCLUSION

Lilly's lawsuit names Mochi Health, but Lilly is targeting patients and invading the doctor-patient relationship with a goal of reducing access to compounded medications. Unlike a doctor, Lilly owes no duty of care to patients, much less the fiduciary duty doctors owe their patients when making prescribing decisions. So Lilly cavalierly brings this litigation to force doctors to prescribe only Lilly's own drugs. Lilly clearly disagrees with doctors prescribing compounded tirzepatide, because it wants more buyers for Lilly's drugs. To bolster its own profits, Lilly wants to tell this Court what services an MSO is permitted to provide to professional corporations, what type of prior examination is needed prior to a doctor prescribing, and limit the drugs doctors should consider. Lilly wants this Court to believe Lilly should set the standard of care nationwide, effectively playing the role of medical boards and pharmacy boards across the country—all while claiming it is here, bringing this lawsuit, to ensure that there should not be undue corporate influence in the practice of medicine.

Lilly's beliefs are misguided. Lilly's one-size-fits-all drugs should not be the only treatment option. Every day, doctors, not Lilly, evaluate their patients' needs, accept the responsibility of making decisions in the patients' best interests, and prescribe whatever medications they believe necessary. Mochi Health merely supports doctors so they can efficiently deliver medical care. These are the same doctors who Lilly admits in its lawsuit have determined that Lilly's drugs are sometimes right for their patients, but that is not enough. Lilly wants it all.

Lilly's litigation is not about unfair competition or false advertising. Mochi Health is not even a competitor, and Lilly has not found a single patient who claims they were misled by any advertising, much less come up with a plausible theory of how they would be. The lack of *factual* allegations to support the Complaint reveal Lilly's true motives. It seeks a stage to fearmonger to patients that compounded medications are not safe—even though compounding pharmacies stepped up when Lilly failed to meet clinical demand, forcing FDA to declare a national drug shortage. Not satisfied that some physicians are still prescribing compounded medications after FDA declared the end of the shortage, Lilly now decides to try its hand at playing each state's medical and pharmacy board, targeting physician decision-making and the companies that support the physicians.

Fortunately for patients, Lilly can only manufacture drugs, not causes of action.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

DATED: June 12, 2025

HOOPER, LUNDY & BOOKMAN, P.C.

By: */s/ Joseph R. LaMagna*

JOSEPH R. LAMAGNA
ANDREA L. FREY
BENJAMIN Y. LIN
Attorneys for Defendants

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June 2025, I have electronically filed the foregoing DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel on the CM/ECF list for this case.

*/s/ Joseph R. LaMagna*
JOSEPH R. LAMAGNA

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987