UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>   Plaintiff,<br><br>   v.<br><br>MOCHI HEALTH CORP., et al.,<br><br>   Defendants. | Case No. 25-cv-03534-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

Eli Lilly and Company ("Lilly") brings this suit against Mochi Health Corp., Mochi Medical CA, P.C., Mochi Medical P.A., and Aequita Pharmacy LLC alleging a scheme to mislead consumers into purchasing compounded versions of Lilly's FDA-approved medications, MOUNJARO® and ZEPBOUND®. Lilly asserts four causes of action: 1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, by Mochi Health; 2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, by Mochi Health; 3) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by Mochi Health; and 4) a civil conspiracy among all Defendants to commit these statutory violations. Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).

Having considered the parties' submissions, and with the benefit of oral argument on August 28, 2025, the Court **GRANTS** the motion to dismiss, without prejudice and with leave to amend. Lilly has failed to plausibly allege it has Article III standing to assert its claims in federal court.

//

//

//

**FACTUAL ALLEGATIONS**

Eli Lilly is a pharmaceutical company responsible for the research and formulation of two FDA-approved weight loss medications: MOUNJARO® and ZEPBOUND®. (Dkt. No. 1 ¶ 2.[1]) The active pharmaceutical ingredient in these two medications is tirzepatide, which targets the patient's GLP-1 and GIP receptors to improve blood sugar control and reduce appetite. (*Id.* ¶ 39.) Mochi Health is a telehealth company that connects consumers with physicians who can prescribe weight-loss medications, including compounded versions of tirzepatide. (*Id.* ¶¶ 3, 48.) Compounding medications is a "practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes or alters ingredients of a drug to create a medication tailored to the needs of an individual patient." (*Id.* ¶ 42.) Since compounded medicines are typically prescribed patient-by-patient, they do not involve the same FDA approval process, nor are they subject to the same regulations as FDA-approved medications. (*Id.* ¶¶ 42-44.) Lilly brings this suit against Mochi Health based on alleged unfair competition and false advertising related to compounded tirzepatide medications and Mochi Health's own business practices.

Lilly's First Cause of Action under the UCL arises out of Mochi Health's alleged corporate practice of medicine. (*See generally*, *id.* ¶¶ 84-123.) Prior to December 2024, Mochi Health prescribed its compounded tirzepatide medication in 2.5 mg, 5 mg, 7.5 mg, 10 mg, 12.5 mg, and 15 mg dosages. (*Id.* ¶ 96.) Subsequently, Mochi Health allegedly changed the dosages for all its customers without consulting them or receiving a clinical indication from a physician. (*Id.* ¶¶ 97-99.) In March 2025, Mochi Health then allegedly changed the dosages once again, reverting to the original quantities prescribed prior to December 2024. (*Id.* ¶ 103.) Lilly asserts these activities violated California's prohibition on the corporate practice of medicine because Mochi Health made medical decisions for patients without a medical license and based on profit motives rather than clinical need. (*Id.* ¶¶ 104-5.)

Further, Lilly alleges Mochi Health not only changed the tirzepatide dosages, but also

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

included "additives" such as niacinamide and pyridoxine, without patient consent or a clinical indication. (*Id*. ¶¶ 106, 109-11.) Lilly contends these changes were "driven by Mochi Health's and its owners' financial interests and their influence on prescribing decisions." (*Id*. ¶ 112.) Indeed, Lilly alleges customers on public forums expressed concern about these changes. (*Id*. ¶¶ 113-20.) For instance, Lilly points to a complaint posted by a Mochi Health customer on the Better Business Bureau's website, indicating their dissatisfaction with the unilateral decision to add niacinamide to the compounded medication. (*Id*. ¶ 113.) The online complaint allegedly stated the customer had broken out in a rash, which a dermatologist opined was caused by the niacinamide. (*Id*.) In response to customer inquiries, Mochi Health released statements noting the additives were "not clinically significant" and changes were dependent on the pharmacy used to fill the prescription. (*Id*. ¶¶ 115-17.) On these allegations, Lilly argues Mochi Health again violated the prohibition on the corporate practice of medicine.

As to the remaining causes of action for false advertising, Lilly alleges Mochi Health has made myriad false or misleading statements to consumers. These include:

- Misrepresenting to consumers the source of Mochi Health's tirzepatide medication, including that it is a generic of Lilly's MOUNJARO® and ZEPBOUND®;
- Misrepresenting Mochi Health's compounded tirzepatide medications as safe and effective based on studies conducted of Lilly's products;
- Claiming Mochi Health's compounded tirzepatide drug is "personalized";
- Falsely claiming Mochi Health's partner, Aequita Pharmacy, voluntarily stopped compounding tirzepatide medications;
- Advertising Mochi Health's founder and CEO as a licensed physician.

(*See id*. ¶¶ 126-55.) The first three causes of action are brought against Mochi Health, and the Fourth Cause of Action for conspiracy to commit statutory violations includes both Mochi Medical entities and Aequita Pharmacy. (*Id*. ¶¶ 186-90.)

In Section VI of the Complaint, Lilly articulates how the alleged challenged conduct injured consumers and Lilly:

//

## VI. MOCHI HEALTH'S UNLAWFUL CONDUCT HARMS CONSUMERS AND LILLY

Defendants' conduct has harmed Lilly and consumers. That harm will continue if unchecked.

*First*, Defendants' conduct risks patient safety by subjecting their medical decision-making process to Defendants' profit motivations and exposing them to the unnecessary risks associated with untested and unproven compounded drugs.

*Second*, Defendants' conduct causes irreparable harm to Lilly's brand and customer goodwill by promising results that consumers cannot obtain from Defendants' product. Mochi Health promotes its tirzepatide plus additive injections by trading on the credibility—earned through decades of safe and effective pharmaceutical manufacturing and years of clinical research and testing on tirzepatide specifically—of Lilly and its FDA-approved MOUNJARO® and ZEPBOUND®. When consumers fail to achieve desired results from Mochi Health's combination injection, consumers may conclude that tirzepatide is ineffective in general— an outcome made more likely given Defendants' reliance on Lilly's clinical studies and their explicit claims that their product functions identically to Lilly's products, with the additives having no clinical significance. Worse still, if consumers are harmed using compounded tirzepatide products from Defendants—where their dosage and formulation are subject to repeated arbitrary changes based solely on Defendants' business relationships without any clinical justification—consumers may even draw unwarranted conclusions about the safety and effectiveness of Lilly's FDA-approved tirzepatide medicines.

(*Id*. ¶¶ 156-58.)

### SUBJECT-MATTER JURISDICTION

"[F]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (quoting *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999)). Though neither party discussed Article III standing in the briefing, during the hearing, the Court noted Lilly's allegations may present standing issues. So, the Court first determines whether it has subject-matter jurisdiction over each claim.

Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A plaintiff has standing to sue in federal court only when he has established "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury

4

1    was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial

2    relief." *Id.* "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who

3    have been *concretely harmed* by a defendant's statutory violation may sue that private defendant

4    over that violation in federal court." *Id*. at 427 (emphasis in original). Additionally, "standing is

5    not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press

6    and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

7    Since Lilly filed its complaint in federal court, it bears the burden of showing by a preponderance

8    of the evidence that subject-matter jurisdiction exists. *United States ex rel. Solis v. Millennium*

9    *Pharms., Inc.*, 885 F.3d 623, 625 (9th Cir. 2018).

10       Here, Lilly has failed to plausibly allege an injury in fact. As recited above, Lilly alleges

11   harm to consumers and only *reputational* harm to itself. (Dkt. No. 1 ¶¶ 156-58.) The basis of that

12   reputational harm is two-fold. First, consumers who fail to achieve desired results from Mochi

13   Health's compounded tirzepatide medication may conclude Lilly's product is ineffective. (*Id*. ¶

14   158.) And second, "if consumers are harmed using compounded tirzepatide products from

15   Defendants . . . consumers may draw unwarranted conclusions about the safety and effectiveness"

16   of Lilly's product. (*Id*.) In opposing Defendants' motion to dismiss, Lilly reiterates its alleged

17   harm is reputational:

> "[a]lthough diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable" by the Lanham Act. "[W]hen a party claims reputational injury from disparagement, competition is not required for proximate cause." It is sufficient to allege that the defendant damages the product's reputation by, for example, equating it with an inferior product. ***That is precisely what Lilly alleges here***.

22   (Dkt. No. 68 at 25 (emphasis added).) Consequently, to show injury-in-fact sufficient to establish

23   Article III standing, Lilly must allege a factual basis to support its conclusion that its reputation

24   has been damaged by comparison to an inferior product.

25       The Complaint, however, alleges no such facts. First, Lilly does not allege any consumers

26   of Mochi Health's compounded tirzepatide medication failed to achieve their desired weight loss

27   results. Nor are any facts alleged that plausibly support an inference the compounded medication

28   does not work as promised. At base, Lilly appears to argue the mere fact a medication is

compounded makes it an inferior version of an FDA-approved product with the same active pharmaceutical ingredient. But compounding is a federally recognized and regulated pharmaceutical practice subject to various limitations by the Federal Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 353a (describing limitations on the practice of compounding and the basis for regulatory limits on the practice). So, the existence of compounded tirzepatide medications does not, in itself, plausibly support harm to the reputation of a tirzepatide manufacturer. To permit a plausible inference of reputational harm, Lilly must allege more, namely facts supporting an inference that Mochi Health's compounded medication fails to meet consumer expectations about tirzepatide.

Second, and relatedly, Lilly does not plausibly allege Mochi Health customers were harmed by the compounded tirzepatide medications such that they could draw unwarranted conclusions about the safety and efficacy of MOUNJARO® or ZEPBOUND®. The only factual allegation Lilly offers to support this reputational injury is that a Mochi Health customer posted a complaint on the Better Business Bureau's website stating they experienced a rash that may have been caused by niacinamide in the compounded medication. (Dkt. No. 1 ¶ 113.) Indeed, at the hearing, Lilly could not identify any other allegation to support its assertion that its reputation had been harmed. (Dkt. No. 91 at 25-26.) However, this lone internet post by an unidentified individual does not support a plausible inference that Mochi Health customers could reasonably draw a negative inference about Lilly's product. Lilly does not allege Mochi Health misled consumers into thinking there was no niacinamide, pyridoxine, or glycine in the medication—in fact, Mochi Health told customers about these additives on various occasions. (Dkt. No. 1 ¶¶ 115-17.) Further, the customer who allegedly complained of a rash knew of the niacinamide in the product prior to using it, and remarked on how it was a new addition compared to their previous prescription. (*Id*. ¶ 113.) To wit, this allegation shows a customer who was aware of how this product differed from other tirzepatide products without niacinamide. Further, the allegation fails to support an inference that customers in such a scenario would impute the negative effect to Lilly's product, which does not contain niacinamide. So, this lone allegation does not indicate Lilly suffered a concrete injury.

In sum, Lilly premises its injury from Defendants' conduct on reputational harm. (*Id*. ¶¶ 156-58.) But the Complaint fails to allege facts that plausibly support an inference of reputational harm, and thus, an inference of injury. Without injury, there is no standing. *TransUnion LLC*, 594 U.S. at 423. And without standing, there is no subject-matter jurisdiction. *Polo v. Innovations Int'l. Inc.*, 833 F.3d 1193, 1194, 1996 (9th Cir. 2016) (holding a district court lacks "federal subject-matter jurisdiction" and has "no power to adjudicate the matter" when a plaintiff does not establish Article III standing). So, the Complaint must be dismissed.[2]

**CONCLUSION**

For the reasons stated above, Plaintiff has not met its burden to show subject-matter jurisdiction. Accordingly, the Court **GRANTS** Defendants' motion to dismiss, albeit on different grounds than Defendants urged. As this defect may be cured, Plaintiff is granted leave to amend all claims previously asserted. Any amended complaint must be filed by **November 14, 2025.** Plaintiff must seek further leave of court if it wishes to add new claims or defendants.

This Order disposes of Docket No. 45.

**IT IS SO ORDERED.**

Dated: October 24, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

---

[2] Defendants filed a request for judicial notice of 12 documents in support of their motion to dismiss. (Dkt. Nos. 46-47.) The Court did not require any material outside the pleadings to resolve the issue of Article III standing raised *sua sponte*. Therefore, the Court **DENIES AS MOOT** the request for judicial notice, without prejudice to a further request to take notice of the documents in a subsequent motion.

7