JOSEPH R. LAMAGNA (State Bar No. 246850)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail: jlamagna@hooperlundy.com

BENJAMIN Y. LIN (State Bar No. 326703)
ANDREA L. FREY (State Bar No. 311913)
**HOOPER, LUNDY & BOOKMAN, P.C.**
44 Montgomery Street, Suite 3500
San Francisco, California 94104
Telephone: (415) 875-8500
Facsimile: (310) 362-8937
E-Mail: blin@hooperlundy.com

Attorneys for Defendants MOCHI HEALTH
CORP., MOCHI MEDICAL CA P.C., MOCHI
MEDICAL P.A., AEQUITA PHARMACY, LLC,
AND AEQUITA CORP.

Ronald J. Friedman (*pro hac vice*)
Lexie M. Smith (State Bar No. 324022)
**OGDEN MURPHY WALLACE, PLLC**
701 5th Ave, Suite 5600
Seattle, WA 98104
Telephone: (206) 447-7000
Facsimile: (206) 447-0215
E-Mail: rfriedman@omwlaw.com
        lsmith@omwlaw.com

Attorneys for Defendants AEQUITA
PHARMACY, LLC AND AEQUITA CORP.

RACHAEL PONTIKES
(*pro hac vice*)
**BLANK ROME LLP**
444 W. Lake St., Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
E-Mail: rachael.pontikes@blankrome.com

SHANNON E. MCCLURE
(*pro hac vice*)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
E-Mail: shannon.mcclure@blankrome.com

Attorneys for Defendants MOCHI HEALTH
CORP., MOCHI MEDICAL CA P.C., AND
MOCHI MEDICAL P.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>  Plaintiff,<br><br>  vs.<br><br>MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., MOCHI MEDICAL P.A., AEQUITA PHARMACY, LLC, AEQUITA CORPORATION,<br><br>  Defendants. | Case No. 3:25-cv-3534-JSC<br><br>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>*[Filed concurrently with [Proposed] Order; Request for Judicial Notice; and Decl. of Joseph R. LaMagna ISO Defendants' Request for Judicial Notice]*<br><br>Judge Jacqueline Scott Corley<br><br>Action Filed:  April 23, 2025 |

1            Case No. 3:25-cv-3534-JSC

10342573.1

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 5, 2026 at 10:00 am in Courtroom 8, 19th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, or as soon thereafter as the matter may be heard, Defendants MOCHI HEALTH CORP., MOCHI MEDICAL CA P.C., MOCHI MEDICAL P.A., AEQUITA PHARMACY, LLC, AEQUITA CORPORATION ("Defendants") will move and hereby do move the Court for an Order dismissing the Complaint in its entirety.

Defendants' Motion to Dismiss First Amended Complaint is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Joseph R. LaMagna, the files and records in this case, and any further written or oral argument as permitted to be presented at the hearing.

DATED: December 12, 2025          HOOPER, LUNDY & BOOKMAN, P.C.

By:    */s/ Joseph R. LaMagna*
JOSEPH R. LAMAGNA
BENJAMIN Y. LIN
Attorneys for Defendants

2       Case No. 3:25-cv-3534-JSC
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 11

I.    INTRODUCTION................................................................................................................ 11

II.   FACTUAL BACKGROUND ............................................................................................. 13

    A. The Mochi Medical Entities: Providing Health Care to Patients ..................................... 13

    B. Mochi Health: A Telehealth Company Providing Management Services ......................... 13

    C. Aequita: A Compounding Pharmacy Filling Prescriptions Issued by Doctors ................. 14

    D. The California Medical Board Polices CPOM, Determining the Standard of Care .......... 14

    E. Drug Compounding: An Inherently Personalized Form of Drug-Making ......................... 14

    F.  The California Board of Pharmacy Polices the Practice of Pharmacy............................... 16

    G. Lilly's Claims .................................................................................................................... 16

III.   ARGUMENT ...................................................................................................................... 16

    A. Legal Standards ................................................................................................................. 16

    B. Lilly's Complaint Fails to Establish Article III Standing ................................................. 17

        1.    Lilly Fails to Plead an Actual or Imminent Injury....................................................... 17

            a.    Lilly's Supposed Reputational Harm Is Not Supported by Facts and Is
                 Implausible ......................................................................................................... 17

            b.    Lilly's Lost Sales Allegations Are Not Plausible............................................... 19

        2.    Lilly Fails to Allege Injury Fairly Traceable to Defendants' Conduct...................... 21

        3.    Lilly's Alleged Injuries Are Not Redressable Through This Suit ............................. 22

    C. Lilly Lacks Standing Under the Lanham Act..................................................................... 23

        1.    Lilly's Allegations Fail to Plausibly Establish Direct Competition ......................... 24

        2.    Lilly Fails to Plead Facts Showing It Is Within the "Zone of Interests" ................... 25

        3.    Lilly Has Not Alleged Any Proximate Relationship Between Its Alleged Lost Sales
            and Ads by Mochi Health or Lilly's Reputational Harm ......................................... 25

    D. Lilly Lacks Standing Under the UCL ................................................................................ 27

    E. The Complaint Should Be Dismissed Pending Agency Investigations ............................. 27

        1.    The Medical Board Polices CPOM and Prescriptions (Count I) .............................. 28

        2.    FDA and Pharmacy Board Police the Advertising of Drugs (Count II).................... 29

    F.  Lilly's Claims Fail to Plausibly State a Claim .................................................................. 30

        1.    Lilly Fails to Plead a Lanham Act Claim (Cause of Action II) ................................. 31

            a.    Lilly's Safety and Effectiveness Theory Is Not Actionable .............................. 31

            b.    Plaintiff's Personalization Claim Fails to Identify a False Statement ............... 35

            c.    Lilly's Claims Are Precluded ............................................................................ 36

            d.    Lilly Fails to Plausibly Plead Proximate Cause ................................................ 39

        2.    Lilly Fails to Plead Unlawful, Unfair, or Fraudulent Acts Under the UCL .............. 39

            a.    Lilly Fails to Plead Unlawfulness...................................................................... 40

            b.    Lilly Fails to Plead Unfairness. ......................................................................... 42

            c.    Lilly Fails to Plead Fraud. ................................................................................. 43

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

3

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

3. Lilly Fails to Plead A Conspiracy Claim (Cause of Action III) ............................... 43

    a.    Conspiracy Is Not A Stand Alone Cause of Action ......................................... 43

    b.    Lilly Did Not Adequately Plead Conspiracy .................................................... 43

IV.  CONCLUSION ............................................................................................................. 45

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
465 F.3d 1123 (9th Cir. 2006) ........................................................................................ 12

*Allbirds, Inc. v. Giesswein Walkwaren AG*,
No. 19-05638, 2020 WL 6826487 (N.D. Cal. June 4, 2020) ........................................ 16

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
No. 17-1551, 2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ...................................... 29

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
No. 17-1551, 2018 WL 5919210 (C.D. Cal. Apr. 30, 2018) ........................................ 27

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
No. 17-1551, 2019 WL 4545960 (C.D. Cal. Mar. 27, 2019) ................................... 5, 25

*Alvarado v. Selma Convalescent Hosp.*,
153 Cal. App. 4th 1292 (2007) ................................................................................ 17, 19

*Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*,
No. 22-421, 2022 WL 2037950 (N.D. Cal. 2022) ....................................................... 32

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ................................................................................................... 33

*AREI II Cases*,
216 Cal. App. 4th 1004 (2013) ..................................................................................... 35

*Argueta v. Walgreens Co.*,
760 F. Supp. 3d 1028 (E.D. Cal. 2024) ....................................................................... 31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 6, 30, 31, 32

*Backus v. General Mills, Inc.*,
122 F.Supp.3d 909 (N.D. Cal. 2015) ........................................................................... 20

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..................................................................................... 24

*Blue Lake Rancheria v. Kalshi Inc.*,
No. 25-06162, 2025 WL 3141202 (N.D. Cal. Nov. 10, 2025) ............................ 21, 22, 26

*Bronson v. Johnson & Johnson, Inc.*,
No. 12-04184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ...................................... 23

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cell. Tel. Co.*,
   20 Cal. 4th 182 (1999)................................................................................................................ 32

*Chandler v. State Farm Mut. Auto Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010)...................................................................................................... 6

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................................................... 12

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008)............................................................................................... 18, 20

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ..................................................................................................... 33

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ..................................................................................... 23

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) ..................................................................................................... 20

*CoreCivic Inc. v. Candide Grp. LLC*,
   No. 20-03792, 2021 WL 1267259 (N.D. Cal. Apr. 6, 2021) ..................................................... 22

*Cytosport, Inc. v. Vital Pharms., Inc.*,
   894 F. Supp. 2d 1285 (E.D. Cal. Sept. 6, 2012)........................................................................ 28

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013)..................................................................................................... 10

*Davidson v. Sprout Foods, Inc.*,
   106 F.4th 842 (9th Cir. 2024)..................................................................................................... 20

*Delphix Corp. v. Actifo, Inc.*,
   No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ........................................... 30

*Dyson, Inc. v. Garry Vacuum, LLC*,
   No. CV1001626MMMVBKX, 2011 WL 13268002 (C.D. Cal. Jan. 4, 2011) ..................... 22, 25

*Eli Lilly & Co. v. Adonis Health, Inc.*,
   No. 25-03536, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ................................................... 23

*Eli Lilly & Co. v. Mochi Health Corp.*,
   No. 25-03534, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025)............................................*passim*

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
   No. 25-3570, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025)............................................*passim*

*Epic Med. Mgmt., LLC v. Paquette*,
   244 Cal. App. 4th 504 (2015)..................................................................................................... 30

10342573.1

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Farmers Ins. Exch. v. Superior Ct.*,
2 Cal. 4th 377 (1992)........................................................................................................18

*Fraker v. KFC Corp.*,
No. 06-1284, 2006 WL 8430934 (S.D. Cal. Oct. 19, 2006) ..............................................24

*Grafilo v. Soorani*,
41 Cal. App. 5th 497 (2019)..............................................................................................18

*Helfand v. Gerson*,
105 F.3d 530 (9th Cir. 1997).......................................................................................10, 22

*Intuit Inc. v. HRB Tax Grp., Inc.*,
No. 24-00253, 2025 WL 1168897 (N.D. Cal. Apr. 22, 2025) ............................................21

*K & N Eng'g, Inc. v. Spectre Performance*,
No. 09-01900, 2011 WL 4387094 (C.D. Cal. Sept. 20, 2011)...........................................24

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)...........................................................................................20

*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571 (1995)......................................................................................33, 34

*Kirchmeyer v. Helios Psychiatry Inc.*,
89 Cal. App. 5th 352 (2023)..............................................................................................18

*Kurin, Inc. v. ICU Med., Inc.*,
No. 24-00564, 2024 WL 5416672 (C.D. Cal. Nov. 8, 2024)..............................................23

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
No. 12-3762, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ...............................................33

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011)......................................................................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ....................................................................................................13, 15

*Linder v. United States*,
268 U.S. 5 (1925) ..............................................................................................................18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................................................7

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
200 Cal. App. 4th 480 (2011)............................................................................................32

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023)............................................................................................24

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

*Med. Bd. of Cal. v. Chiarottino*,
225 Cal. App. 4th 623 (2014)........................................................................................ 18, 19

*Newcal Indus. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008).............................................................................................. 26

*Oregon v. Ashcroft*,
368 F.3d 1118 (9th Cir. 2004)............................................................................................... 18

*Outsourcing Facilities Ass'n v. FDA*,
No. 24-953, 2025 WL 1397537 (N.D. Tex. June 13, 2025) ..................................................... 10

*Pom Wonderful, LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014) .................................................................................................... 27, 28

*Prager Univ. v. Google LLC*,
951 F.3d 991 (9th Cir. 2020)................................................................................................. 24

*Reese v. Odwalla, Inc.*,
30 F. Supp. 3d 935 (N.D. Cal. 2014) ..................................................................................... 20

*Safe Air For Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)............................................................................................. 6, 8

*Shamsian v. Dep't of Conservation*,
136 Cal. App. 4th 621 (2006)................................................................................................ 19

*Shuts v. Covenant Holdco LLC*,
208 Cal. App. 4th 609 (2012)................................................................................................ 17

*Silver v. BA Sports Nutrition, LLC*,
2020 U.S. Dist. LEXIS 99320 (C.D. Cal. Jun. 4, 2020) ........................................................ 26

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ....................................................................................................... 11, 12

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)........................................................................... 21, 24, 26, 29

*Strategic Partners, Inc. v. FIGS, Inc.*,
No. 19-2286, 2019 WL 12435672 (C.D. Cal. Aug. 19, 2019)................................................. 23

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
922 F. Supp. 299 (C.D. Cal. 1996)........................................................................................ 28

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*,
No. 18-04189, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019) ...................................... 15, 20, 29

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
No. 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022) .................................... 13, 14, 15, 16

8                                    Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ...................................................................................... 5, 27

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................ 7, 8

*Turner v. City and County of San Francisco*,
788 F.3d 1206 (9th Cir. 2015) .............................................................................. 6

*United Bhd. of Carpenters & Joiners of Am. v. Building & Cont'l Trade Dep't*,
770 F.3d 834 (9th Cir. 2014) ............................................................................... 33

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*,
No. 20-9482, 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021) ..................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................................. 20

**Statutes**

21 U.S.C. § 337(a) ................................................................................................ 5, 26

21 U.S.C. § 352(bb) .......................................................................................... 5, 19, 28

21 U.S.C. § 353a ...................................................................................... 5, 11, 12, 27, 28

Cal. Bus. & Prof. Code § 17204 ................................................................................. 17

Cal. Bus. & Prof. Code § 2004 .................................................................................... 4

Cal. Bus. & Prof. Code § 2032 .................................................................................... 4

Cal. Bus. & Prof. Code § 2220 .................................................................................... 4

Cal. Bus. & Prof. Code § 2242 ............................................................................. 4, 11, 12

Cal. Bus. & Prof. Code § 2264 .................................................................................... 4

Cal. Bus. & Prof. Code § 2400 ................................................................................... 18

Cal. Bus. & Prof. Code § 4301(f) ................................................................................. 6

Cal. Bus. & Prof. Code § 17200 ................................................................................. 29

Cal. Health & Saf. Code § 110390 .......................................................................... 6, 19

California Pharmacy Practice Act ................................................................................ 6

California Unfair Competition Law ............................................................................... 6

Federal Food, Drug, and Cosmetic Act ............................................................. *passim*

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Lanham Act .................................................................................................................*passim*

Medical Practice Act ............................................................................................... 4, 18

**Other Authorities**

Cal. Code Regs. tit. 16, § 1735.2 ...................................................................................... 6

Federal Rule 9(b) ........................................................................................................ 20, 33

Federal Rule 11 ................................................................................................................ 17

Federal Rule 12(b)(1) ......................................................................................................... 6

Federal Rule 12(b)(6) .................................................................................................... 6, 20

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

10342573.1

Defendants Mochi Health Corp. ("Mochi Health"), Mochi Medical CA P.C., Mochi Medical P.A. (collectively "Mochi Medical"), Aequita Pharmacy, LLC, Aequita Corporation (collectively "Aequita Defendants") submit the following joint Memorandum in Support of their Motion to Dismiss the First Amended Complaint ("Amended Complaint" or "FAC"):

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This is Lilly's second attempt to bring a cognizable claim before this Court—and, like its predecessor, the amended complaint also fails. In this second bite at the apple, Lilly is, again seeking redress for injuries that do not exist. Lilly still wants to police the roles of physicians, patients, compounding pharmacies, telehealth companies, and regulatory agencies. It desperately wants to say how the law works for each, but the Lanham Act and UCL are not vehicles for manufacturers to enforce their world view.

The crux of Lilly's claims remains that the Defendants are interfering with Lilly's efforts to have doctors prescribe only Lilly's manufactured drugs. Lilly alleges that Mochi Health, a telehealth company, engages in the unlicensed corporate practice of medicine ("CPOM") by directing doctors to treat patients with a compounded medication containing tirzepatide, instead of Lilly's own tirzepatide weight loss drugs, Mounjaro® and Zepbound®. Lilly further alleges Mochi Health falsely advertises compounded medication containing tirzepatide, the active ingredient in Lilly's manufactured drug. Finally, Lilly alleges Mochi Health is not acting alone but supposedly is engaged in a conspiracy—with defendants Mochi Medical and Aequita—to unfairly compete with Lilly by prescribing, making, and selling compounded drugs containing tirzepatide.

Lilly still fails to establish Article III standing. Lilly fails, again, to plausibly plead reputational harm or lost profits. To allege reputational harm, Lilly continues to lean on Reddit posts that contract its position. These posts reveal that patients are fully aware their doctors are prescribing compounded tirzepatide—not Lilly's drugs—and cannot plausibly support any reputational harm to Lilly. Lilly's new allegations that Defendants are luring patients away from Lilly's drugs and causing Lilly to lose profits are not plausible. Lilly has repeatedly represented that it is not competing with compounders because their patients are different for reasons including off-label uses

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

and lack of insurance. More fundamentally, Lilly has not identified a single patient who claimed that they wanted Lilly's medications instead of compounded medications, despite scouring the internet and soliciting patients for feedback on compounded medications. As such, Lilly has not pled facts establishing injury and continues to lack Article III standing.

If this Court determines that Lilly has standing under Article III, Lilly's claims should still be dismissed. Like all doctors, Mochi Medical doctors use their clinical judgment to choose the appropriate medication to treat their patients—they *may* choose to treat a patient with Lilly's manufactured drug or, they *may* choose some other medicine, including a compounded medication containing tirzepatide. Likewise, Aequita or another pharmacy *may* fill the prescriptions that these doctors write, including prescriptions for Lilly's branded drugs. Lilly should not be asking this Court to determine why, when, and how a doctor can prescribe compounded tirzepatide, or what constitutes undue influence on medical judgment by a profit-driven, non-professional (or lay) entity. The California Medical Board, Board of Pharmacy, and FDA have the requisite technical and policy expertise to make these types of determinations. This court should abstain from ruling on Lilly's unfair competition and false advertising claims (Counts I and II).

Furthermore, Lilly has no standing to bring its federal false advertising (Lanham Act) claim as none of these defendants is Lilly's competitor. Mochi Health is a telehealth company providing administrative (i.e., not clinical) services; the Mochi Medical entities are physician-owned professional corporations whose doctors provide health care services via Mochi Health's telehealth platform; and Aequita is a compounding pharmacy. These defendants are not manufacturers and are simply not Lilly's direct competitors. As Lanham Act standing is more stringent than that required by Article III, Lilly's Complaint fails to establish Lanham Act standing (Count II). Finally, Lilly failed to plead an actionable conspiracy claim (Count III).

This Court should recognize this case for what it is—a suit designed to intimidate prescribers, limit lawful options available to doctors to properly treat their patients, and reduce patient choice and access to medications. The amended complaint fails to state a claim, and should be dismissed. Try as it might, Lilly cannot find a cause of action to allow Lilly to dictate how doctors should treat their patients.

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

## II. FACTUAL BACKGROUND

### A. The Mochi Medical Entities: Providing Health Care to Patients

Both Mochi Medical P.A. (a Florida professional corporation) and Mochi Medical CA P.C. (a California professional corporation) are physician-owned corporations responsible for providing healthcare services to patients, including diagnosis, treatment, and prescribing, all of which are carried out by licensed doctors and other healthcare professionals (collectively as "Mochi Providers"). FAC ¶ 75, n. 56, n. 59; Defendant's Request for Judicial Notice ("RJN"), Ex. A. Dr. Rana Ahmad is Director and CEO of Mochi Medical P.A. and Mochi Medical CA P.C. FAC ¶¶ 5, 75, nn. 58, 59; RJN, Exs. B, C.

### B. Mochi Health: A Telehealth Company Providing Management Services

Mochi Health is a telehealth company that acts as a management services organization ("MSO") offering administrative services, technological infrastructure, and support to the Mochi Providers. FAC ¶ 75, n. 56; RJN, Ex. A. As an MSO, Mochi Health licenses its proprietary telehealth platform to the Mochi Providers, facilitating the virtual care that the Mochi Providers independently provide to patients. *Id.* Mochi Health manages a website on behalf of itself and the Mochi Providers. The website informs prospective patients of the Mochi Providers' services and identifies certain drugs that Mochi Providers may prescribe as part of a comprehensive care plan. FAC ¶ 83, n. 76; RJN, Exs. D, E. These drugs include semaglutide-based medications, Wegovy® and Ozempic®; liraglutide-based medication, Saxenda® and Victoza®, manufactured by Lilly's competitor, Novo Nordisk; Lilly's manufactured tirzepatide-based medications, Zepbound® and Mounjaro®; as well as compounded medications. RJN, Ex. D. Mochi Health does not provide medical services, does not compound medications, and, unlike Lilly, does not manufacture drugs. FAC ¶ 75, n. 55; RJN, Ex. A.

Mochi Health does not guarantee that patients receive any drug at all; instead, patients must consult with healthcare providers (including doctors and dieticians) who create treatment plans based on individualized patient need; those plans *may* include prescription drugs. RJN, Ex. E; FAC ¶ 153 (offering customized treatment *plans*). Mochi Providers assess each patient's medical needs to determine what, if any, prescription drug is medically appropriate—including FDA-approved drugs and compounded drugs. *Id.* Whether a patient receives a given drug may also depend on their

13

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

insurance. *Id.* Doctors, not Mochi Health, change prescription drug dosages or formulations based on a patient's individualized clinical need. FAC ¶ 122, n. 114; RJN, Ex. F (instructing patients to discuss dosage with providers on case-by-case basis). Mochi Health's website indicates that compounded drugs do not have FDA approval, and further notes that these treatments are prescribed solely at the discretion of a licensed provider, when appropriate. RJN, Ex. G. Patients are consistently encouraged to consult with their doctors for the most suitable course of care. RJN, Exs. E, G. Dr. Myra Ahmad is Mochi Health's Co-Founder and CEO. FAC ¶ 5. Dr. Myra Ahmad is a graduate of the University of Washington School of Medicine. RJN, Ex. H.

### C. Aequita: A Compounding Pharmacy Filling Prescriptions Issued by Doctors

Aequita Pharmacy, LLC, a Washington limited liability corporation, is a duly licensed compounding pharmacy in Washington State (PHAR.CF.61458335). FAC ¶ 20. Aequita Pharmacy filled prescriptions for Mochi Medical patients until about March 13, 2025, when it ceased compounding sterile drugs. *Id.* ¶ 93; 102. Aequita Corporation, a Delaware Corporation, provides management services to Aequita Pharmacy.

### D. The California Medical Board Polices CPOM, Determining the Standard of Care

The Medical Board of California ("Medical Board") regulates the practice of medicine under the Medical Practice Act ("MPA"). *See* Cal. Bus. & Prof. Code § 2004. This statute grants the Medical Board the power to set professional standards of conduct and investigate and adjudicate alleged violations. *Id.* § 2220. The MPA also affirms that physicians must exercise their independent medical judgment in the care and treatment of patients. *Id.* § 2242. The Medical Board prosecutes aiding and abetting the unauthorized practice of medicine (*see* Cal. Bus. & Prof. Code § 2264); corporate practice of medicine ("CPOM") (*see id*. § 2400 & RJN Ex. I (describing the Medical Board's CPOM enforcement actions)); and breaches of the standard of care by furnishing prescription drugs without an appropriate prior examination and medical indication. *Id.* § 2242. The Medical Board's authority extends to "any individual, partnership, corporation, limited liability company, or other organization" accused of violating the MPA, not just physicians. *Id.* § 2032.

### E. Drug Compounding: An Inherently Personalized Form of Drug-Making

Contrary to Lilly's efforts to cast compounded medications as "knock-off" drugs,

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

compounding is a legitimate, traditional component of pharmacy practice. It is a "process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a medication tailored to the needs of an individual patient." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 360-361 (2002) ("*Western States*"). Doctors prescribe compounded drugs if one-size-fits-all manufactured drugs are inappropriate to treat the patient's needs. *Id*. There is no requirement that "compounded drugs be different for every patient." *Allergan USA, Inc. v. Imprimis Pharms., Inc.*, No. 17-1551, 2019 WL 4545960, \*11 (C.D. Cal. Mar. 27, 2019).

Congress amended the Federal Food, Drug, and Cosmetic Act ("FDCA") to add Section 503A in 1997, imbuing the Food and Drug Administration ("FDA") with additional regulatory oversight of compounding, which had been previously regulated only by the states. *See* 21 U.S.C. § 353a ("Section 503A"). Section 503A purposely exempts compounded medications from FDA's new drug approval process because "[r]equiring FDA approval of all [compounded] drug products … would, as a practical matter, eliminate the practice of compounding." *Western States*, 535 U.S. at 369. Section 503A includes parameters to ensure that compounded medications remain a safe option for personalized patient care, such as limiting the active pharmaceutical ingredients that may be used to compound. *See* 21 U.S.C. § 353a(b)(1)(A)(i)(II). Section 503A specifically authorizes compounders to use an active pharmaceutical ingredient that is a component of a manufactured drug—such as the tirzepatide in Lilly's drugs. *See id*.

While Section 503A generally prohibits compounding what are "essentially copies" of manufactured drugs, it authorizes variations to meet patient need. 21 U.S.C. § 353a(b)(1)(D), (b)(2). FDA gives extensive guidance regarding the variations that compounding pharmacies may make, including the very modifications that Lilly is complaining about—altering the dosage strength or adding active ingredients. *See id.* § 353a(b)(2). FDA requires that compounded medications be compounded based on patient-specific prescriptions or prescription history. *See id.* § 353a(a). Further, FDA polices the false or misleading promotion of compounded drugs. *See* 21 U.S.C. § 352(bb) (deeming a compounded drug misbranded if the "advertising or promotion" of the drug is "false or misleading in any particular"). Private parties cannot enforce the FDCA. *See* 21 U.S.C. § 337(a).

//

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

## F. The California Board of Pharmacy Polices the Practice of Pharmacy

State pharmacy boards have concurrent jurisdiction with FDA to regulate compounding. The California Board of Pharmacy ("Pharmacy Board") enforces the California Pharmacy Practice Act, which prohibits pharmacies from engaging in false or misleading advertising (*see* Cal. Health & Saf. Code § 110390), or committing a deceitful act. *See* Cal. Bus. & Prof. Code § 4301(f). The Pharmacy Board regulates how, when, and which drugs may be compounded. *See* Cal. Code Regs. tit. 16, § 1735.2.

## G. Lilly's Claims

The Amended Complaint asserts three causes of action: (1) unfair competition under the California Unfair Competition Law ("UCL"); (2) false advertising under the Lanham Act; and (3) civil conspiracy. Lilly asserts the final count of conspiracy against all Defendants, while the first two causes of action are asserted only against Mochi Health.

## III. ARGUMENT

### A. Legal Standards

Rule 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. Rule 12(b)(1) permits challenges to subject-matter jurisdiction based on lack of Article III standing. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege sufficient facts—accepted as true—to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not accept conclusory statements, unwarranted factual inferences, or legal conclusions. *Iqbal*, 556 U.S. at 678. "Conclusory allegations of law and unwarranted inferences are insufficient to avoid" dismissal. *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

(9th Cir. 2015).[1] The most fundamental failure of Lily's claims is the lack of injury or harm to Lilly. Injury is the central analysis for Article III standing, Lanham Act standing, and elements of both Lanham Act and UCL causes of action.

### B. Lilly's Complaint Fails to Establish Article III Standing

Article III requires a concrete, particularized injury that is actual or imminent, traceable to the defendant, and redressable by the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). This Court previously dismissed Lilly's original complaint, finding that Lilly failed to adequately allege a concrete injury. *See Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-03534, 2025 WL 2998166, *3 (N.D. Cal. Oct. 24, 2025) ("*Mochi*"). Lilly's Amended Complaint fails to cure this deficiency. Moreover, Lilly's alleged injuries are still not traceable to Defendants' conduct or redressable via this matter.

### 1. Lilly Fails to Plead an Actual or Imminent Injury

Article III requires that a plaintiff allege a concrete, particularized injury that is actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. As the Supreme Court succinctly explained, "no concrete harm, no standing." *TransUnion*, 594 U.S. at 442. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. at 423-427. Lilly's Amended Complaint alleges two injuries— reputational harm and a new theory of lost profits—to support all of its claims, but this new complaint continues to lack the plausible factual underpinning necessary to support its bare conclusory allegations. FAC ¶¶ 185-201.

### a. Lilly's Supposed Reputational Harm Is Not Supported by Facts and Is Implausible

Lilly alleges reputational harm arising from Mochi Health's alleged false advertising (FAC ¶ 182), but Lilly's claims are unsupported by facts. Lilly relies upon cherry-picked Reddit comments

---

[1] Throughout this brief, emphasis is added, citations and internal quotation marks are omitted, and quotations are cleaned up for readability, unless otherwise indicated.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

to argue that patients are dissatisfied with Mochi Health's compounded medications (FAC ¶ 196-197), and asserts this alleged dissatisfaction will be imputed onto Lilly's medicines. *Id.* But the Reddit post to which Lilly cites does not support Lilly's claims. FAC ¶ 195 n. 165; RJN Ex. J. There, the consumers discuss their view of pharmacies providing compounded tirzepatide and compounded medications generally (i.e., the post refers to medication from "DCA" compounding pharmacy, not Mochi Health). The post does not refer to these drugs as Mochi Health's, and does not even hint at any confusion about, or negative attributions to, Lilly's medications. *See Mochi*, 2025 WL 2998166, *3 (noting that the Reddit posts showed consumers understood what they were receiving and did not equate negative compounding experiences with Lilly's medications).

Indeed, the very Reddit post Lilly repeatedly relies upon (FAC ¶ 195 nn. 165-170) to support its theory actually ***undercuts*** its purported reputational harm. There, a consumer responds that they had the "***same*** reaction [i.e., a rash] for 3 years on ***both*** brand Mounjaro and compound." FAC ¶ 195, n. 165; RJN, Ex. J. This is not surprising: adverse events can occur from both Lilly's FDA-approved tirzepatide medications and compounded medications, and the reported adverse events for Lilly's Mounjaro are ***consistent*** with those associated with compounded tirzepatide medications. RJN, Ex. K at 3 (FDA stating that "[m]any of the adverse events reported for compounded products appear to be ***consistent*** with adverse events related to the FDA-approved versions of these products"). Thus, the very reputational harm that Lilly claims will be "unfairly" imputed to Lilly consists of reputational harm Lilly already faces, irrespective of compounded medications. RJN, Ex. Q at 25:16-19 (dismissing suggestion that Lilly's own medications do not have complications that could damage Lilly's reputation).

Lilly's efforts to ***manufacture*** reputational harm continue—literally. Lilly complains that "consumers have contacted Lilly to report adverse events from taking compounded products." FAC ¶ 197. Lilly claims these contacts demonstrate that consumers attribute these adverse reactions to Lilly's approved medication. *Id*. But Lilly conveniently omits the fact that Lilly ***solicits*** consumers to contact Lilly and report alleged issues ***with compounded tirzepatide***. RJN, Ex. L; *see Safe Air For Everyone*, 373 F.3d at 1039 ("[i]n resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss"). On a Lilly-hosted

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

webpage, Lilly repeatedly instructs patients to call Lilly to report adverse events associated with compounded medications, further informing consumers that Lilly can assist them in submitting adverse events with compounded medications to FDA. RJN, Ex. L. Accordingly, the adverse event reports Lilly cites as "facts" suggesting confusion do not plausibly demonstrate that Mochi Health consumers associate its pharmacy's compounded medications with Lilly. FAC ¶ 200. Rather, these reports merely reflect that patients are following Lilly's *own instructions* to report alleged adverse events from compounded tirzepatide directly to Lilly.

Moreover, despite soliciting feedback from consumers, Lilly fails to identify a single consumer who used compounded medications and then had negative perceptions of Lilly. Accordingly, the adverse event reports Lilly cites do not plausibly demonstrate that Mochi Health consumers associate its affiliated pharmacies' compounded medications with Lilly's. FAC ¶ 200. To the contrary, these reports prove that patients know when they are using compounded medications, and report alleged adverse events to Lilly at Lilly's behest. As such, Lilly's FAC continues to "fail[] to allege facts that plausibly support an inference of reputational harm, and thus, an inference of injury. Without injury, there is no standing." *Mochi*, 2025 WL 2998166, \*4.

### b. Lilly's Lost Sales Allegations Are Not Plausible

In addition to its continuing and unfounded claims of reputational harm, Lilly's FAC now attempts to assert that Mochi Health's alleged CPOM violations and its false advertising led to "lost sales" and patient diversion. But Lilly's attempts to point to Mochi Health as the reason for those "lost sales" falls flat because it already admitted that compounded tirzepatide and Lilly's drugs do not serve the same market, and its own Complaint cites Reddit posts revealing that patients fully understand they have received compounded medications and are evaluating the compounded medication provided by different pharmacies.

#### i. *In Federal Court Filings, Lilly Acknowledged Compounded Tirzepatide Medications Do Not Serve the Same Patients as Lilly's Medications*

For its false advertising claim, Lilly alleges that Mochi Health's statements regarding the safety and effectiveness of compounded tirzepatide and representations of "customized obesity medicine" caused diversion of sales and lost profits. FAC ¶ 182. But Lilly pleads no facts to support

these conclusions. In fact, Lilly has repeatedly ***admitted*** the opposite elsewhere—asserting there is no "patient diversion" or lost sales because its drugs do not serve the same patients as compounded drugs. Lilly knows full well that compounded tirzepatide is ***not*** prescribed for the same patients as Lilly's drugs, which demonstrates the implausibility of its diversion claims. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (courts may "reject, as implausible, allegations that are too speculative to warrant further factual development"). In 2022, FDA declared that Lilly's tirzepatide-based drugs were "in shortage." FAC ¶ 157. In December 2024, FDA determined Lilly could meet patient need, and declared the shortage resolved.[2] FDA's shortage resolution decision was challenged in federal court, and Lilly intervened to support FDA. There, Lilly argued it could adequately meet patient need for tirzepatide-based medications, explaining:

> [T]here were good reasons to think that ***much of the market for compounded tirzepatide would not translate to future demand for Lilly's FDA-approved products.*** Compounded products are often promoted for uses different from the indications FDA has approved, including by affiliated telehealth providers, so patients may be less likely to get a prescription from a physician for FDA-approved medicine. ***There also might not be insurance coverage for those off-label uses***, and some compounded products use a different formulation than Lilly's products.

RJN, Ex. N at 25-26. Relying on Lilly's representations, the court affirmed FDA's decision. *Outsourcing Facilities Ass'n v. FDA*, No. 24-953, 2025 WL 1397537, *9 (N.D. Tex. June 13, 2025).

Thus, Lilly admitted that its drugs and compounded tirzepatide medications serve patients with ***different*** needs, and that insurance and other factors influence a doctor's prescribing determinations. Lilly's admission is fatal to its claims that Mochi Health's alleged corporate practice of medicine and advertisements lure customers away from Lilly. Stated differently, Lilly cannot claim patient diversion before this Court when Lilly has conceded, in a different federal court, that doctors may prescribe compounded tirzepatide medications for patients whom Lilly's drugs are not options. Lilly is bound by its prior admission. *See Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) (a

---

[2] Following the shortage, compounders may continue to compound with tirzepatide API in accordance with Section 503A and FDA guidance. *See* 21 U.S.C. § 353a(b)(1)(D); *see also* RJN, Ex. M (FDA's essential copies guidance).

party taking a position in litigation precludes that party from later assuming an inconsistent position on the same issue in other litigation). Even if it could change positions, Lilly's allegations of diversion are not plausible and contradicted by Reddit posts showing that consumers are considering options within the compounded market, not Lilly's products. Finally, Lilly's allegations omit the role of a prescriber assessing appropriate options for a patient and make a misleading claim that patients can simply select what medication they receive.

> ### ii. Lilly's Complaint Relies Upon Reddit Posts that Contradict Its Lost Sales Argument

Specifically, with regard to Lilly's CPOM claims, Lilly claims that Mochi Health customers "are steered away from genuine Mounjaro® and Zepbound® toward compounded tirzepatide." FAC ¶ 186. But that is contradicted by Lilly's cited Reddit post, in which consumers suggest using a different pharmacy, and acknowledge their ability to switch. RJN, Ex. J at 4 ("I literally had the same thing happen when mine came from DCA pharmacy!!! Went back to Empower.") None asked or suggested getting Lilly's products. Lilly has not pled any example of patients denied access to Lilly's medications where appropriate or desired. Nonetheless, without any factual support, Lilly alleges "if Mochi's customers had been informed and given the opportunity to choose where their prescriptions are sent and how they are filled, at least some would have chosen" Lilly's products. FAC ¶¶ 186-187. However, it is simply implausible that patients seeking weight-loss treatments are unaware of Lilly's market-leading drugs. Lilly's Reddit posts show that consumers here are deliberately choosing between different compounded options. RJN, Ex. J.

### 2. Lilly Fails to Allege Injury Fairly Traceable to Defendants' Conduct

Even if Lilly's unsupported allegations were to demonstrate injury (they do not), the FAC still fails to allege facts showing the injury is "fairly traceable" to each Defendant's alleged statutory violations, as required by Article III. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–43 (1976). The Supreme Court has made clear that a party lacks standing where the alleged injury results from the independent decisions of third parties, not the challenged conduct. *Id.* Here, any alleged loss of sales or reputational harm to Lilly results from the medical judgment of prescribing doctors, who are required by law to determine the necessity and appropriateness of any compounded drug

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

prescribed. *See* 21 U.S.C. § 353a(a); Cal. Bus. & Prof. Code § 2242. Doctors' decisions to prescribe a compounded drug breaks any purported chain of causation and renders Lilly's claims "purely speculative." *Simon*, 426 U.S. at 42–43.

Moreover, Lilly has made *no* allegations against either of the Aequita Defendants that their alleged injury is "fairly traceable" to their conduct. The extent of the Aequita allegations in the FAC are broad statements of joint ownership, a shared corporate address between the Aequita Defendants, a legitimate business partnership between Aequita Pharmacy and Mochi Health, and unrelated investigations into Aequita Pharmacy operations. None of these allegations supports an injury to Lilly that is fairly traceable to the conduct of the Aequita Defendants. Thus, Lilly has failed to establish standing.

### 3. Lilly's Alleged Injuries Are Not Redressable Through This Suit

Finally, even if Lilly could allege a concrete injury fairly traceable to Defendants' conduct (it cannot), Lilly's FAC still does not cure the redressability defect. Article III requires that a plaintiff's alleged injury be redressable by a favorable decision of the court. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc*., 465 F.3d 1123, 1125–26 (9th Cir. 2006). Here, Lilly's alleged harms cannot be remedied by either injunctive or monetary relief against Mochi Health or Mochi Medical. First, neither compounds any drugs, so relief will not reach any compounders. Second, Lilly's sales necessarily depend on prescribing determinations made by physicians, who are required by law to select medications based on individual patient needs. *See* 21 U.S.C. § 353a(a); Cal. Bus. & Prof. Code § 2242. Notably, the physicians are not parties to this case (nor could they be). Even if the Court enjoined Mochi Health's advertising or sales practices, no facts plausibly suggest that prescribers would choose Lilly's products over other compounded drugs advertised or sold by other platforms and pharmacies, or competing products like those manufactured by Novo Nordisk. Indeed, as discussed above, Lilly has *admitted* the opposite. RJN, Ex. N at 25-26 (admitting that the market for compounded tirzepatide would not translate to demand for Lilly's drugs due to factors including off-label use and insurance). Thus, any alleged harm to Lilly would persist regardless of the outcome here, as it is entirely dependent on the decision of third-party providers and the wide availability of alternative treatments.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC
10342573.1
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Lilly's reputational harm is likewise not redressable. No action against Mochi Health or Mochi Medical would affect non-party compounders whose products could purportedly cause Lilly's reputational harm. If any reputational harm existed, it would flow from Lilly's own actions, including soliciting adverse event reports and continuing to manufacture medications causing the same adverse events. RJN, Exs. K, L. Additionally, Lilly did not and cannot plead that its alleged injuries would likely be redressed by a favorable decision against the Aequita Defendants. First, Lilly has not alleged any facts to support harms specifically attributable to the several-month period, ending in March 2025, when Aequita Pharmacy filled prescriptions for Mochi Health customers. FAC ¶¶121, 126. Second, any attempt to impose injunctive relief would be futile, given that Aequita Pharmacy no longer fills prescriptions for Mochi Health customers. *Id.* Because Lilly has failed to adequately plead Article III standing, Lilly's Amended Complaint requires dismissal, and no further standing or injury analysis is necessary under the stricter standards of the Lanham Act and UCL.

### C.  Lilly Lacks Standing Under the Lanham Act

The Lanham Act imposes a more stringent standard than Article III standing, requiring the Court to separately assess whether Lilly's allegations satisfy both the "zone of interests" and "proximate cause" prongs. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014). The "zone of interests" test requires an alleged injury to a commercial interest in reputation or sales; "proximate cause" requires that the injury flow directly from the alleged deception causing consumers to withhold trade. *Id.* at 131-32. Only if the parties are "direct competitors" can the court presume injury; otherwise, the plaintiff must plausibly allege that "some consumers who bought the defendant's product under a mistaken belief would have otherwise bought the plaintiff's product." *Vampire Fam. Brands, LLC v. MPL Brands, Inc.,* No. 20-9482, 2021 WL 4134841, *7 (C.D. Cal. Aug. 6, 2021) (lack of standing where injury was not presumed because seller of canned cocktails without distilled spirits was not director competitor with seller of vodka). The FAC fails to plead direct competition, commercial injury, or proximate cause—grounds on which courts routinely dismiss Lanham Act claims. *See ThermoLife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, *1 (9th Cir. Mar. 2, 2022); *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 25-3570, 2025 WL 2631620, *7 (C.D. Cal. Aug. 29, 2025) ("*Willow Health*") (Lilly lacked standing under the

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Lanham Act, as well as under California's UCL and FAL).

### 1. Lilly's Allegations Fail to Plausibly Establish Direct Competition

Lilly is a drug manufacturer. FAC ¶ 30. "Mochi Health is a telehealth corporation." *Id.* ¶ 67 Far from being a drug manufacturer, Mochi Health instead has "'affiliated medical services providers,' who then prescribe medications advertised on Mochi Health's website." *Id*. Lilly quotes Mochi Health webpage's "Terms of Use," which states that that "Mochi [Health] provides practice management services to Mochi Medical, P.A., a Florida professional corporation, Mochi Medical CA, P.C., a California professional corporation, and other affiliated medical services providers (collectively, "Mochi Providers"). ***Mochi Providers provide medical services***"—not Mochi Health. *Id.* ¶ 67 n. 46; RJN, Ex. A.

Notably, Lilly does not and cannot allege that Mochi Health compounds drugs. Mochi Health is several degrees removed from Lilly: (1) Mochi Health provides medical management and technology services to the Mochi Providers; (2) Mochi Providers assess, diagnose, and treat patients, which *may* include prescribing medications; and (3) a pharmacy fills the prescription—whether that be a Lilly-branded drug, a competitor drug like Novo's Ozempic®, or others.

*BPI Sports* is instructive on what constitutes direct competition, and the nexus that must be pled in the absence of direct competition. 2022 WL 612669. The Ninth Circuit found that two plaintiffs—Thermolife and Muscle Beach—were not direct competitors of the defendant BPI. *Id*. \*2. Thermolife licensed the use of technology and ingredients for dietary supplements. *Id*. BPI, on the other hand, produced its own dietary supplements. *Id.* Because the parties operated on "different level[s]" of the supply chain, they were not direct competitors, and Thermolife could not presume commercial injury and must plead proximate causation. *Id.* And, Thermolife's Complaint failed to plead "anything like a 1:1 relationship" between alleged lost sales and any "potential sales diverted to BPI" due to the false advertising. *Id*. The court also noted that the crowded dietary supplement market undermined the plausibility of Thermolife's claim that BPI's advertising directly caused Thermolife's alleged losses. *Id.* \*3. Muscle Beach fared no better; while it sold sport nutrition supplements, it failed to allege facts showing that consumers viewed its products to be substitutes for BPI's—such as comparative advertising or customer preference *Id.* \*3.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1                    DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, no facts in Lilly's Amended Complaint plausibly plead that Mochi Health is a direct competitor of Lilly. Lilly does not allege that Mochi Health produces any drugs, because it does not. Mochi Health is not a compounding pharmacy. Nor has Lilly plausibly alleged "anything like a 1:1 relationship" between compounded tirzepatide medications sold through Mochi Health's platform and diverted sales from Lilly. As Lilly has, in fact, admitted, compounded drugs and Lilly's drugs serve different markets. RJN, Ex. N. Thus, Lilly has not plausibly pled that Mochi Health directly competes with Lilly's medications. *BPI Sports*, 2022 U.S. App. LEXIS 5481, \*4; *see also ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. 18-04189, 2019 WL 3840988, \*4 (D. Ariz. Aug. 15, 2019) (finding the purported link between defendant's and plaintiff's products to be too attenuated to plausibly plead direct competition).

### 2. Lilly Fails to Plead Facts Showing It Is Within the "Zone of Interests"

Because injury cannot be presumed, Lilly must—but fails to—plead a commercial injury. To be within the "zone of interests," a plaintiff must allege "an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-132; *see also Am. Fitness,* 2019 WL 3840988, \*7-8 (plaintiff failing to allege commercial injury inside the zone of interest). The FAC does not identify any lost consumers, lost sales, or specific reputational harm traceable to Defendants. While the FAC now alleges that Defendants attract consumers interested in Lilly's drugs and then redirect them to compounded drugs (FAC ¶ 81), Lilly still fails to identify any *facts* showing that a consumer actually chose a compounded product over Lilly's due to Defendants' conduct (despite soliciting such consumers to provide feedback), or that Lilly lost any sales as a result. Similarly, Lilly's conclusions that Mochi Health's ineffective drugs harm Lilly's reputation (*id.* ¶ 198) are insufficient to establish harm. *See Willow Health*, 2025 WL 2631620, \*5-6 (finding Lilly failed to adequately allege lost sales or reputational harm to place Lilly within the zone of interests). But without any concrete economic or reputational harm, Lilly falls outside the Lanham Act's zone of interests, and its claims must be dismissed.

### 3. Lilly Has Not Alleged Any Proximate Relationship Between Its Alleged Lost Sales and Ads by Mochi Health or Lilly's Reputational Harm

Lilly also must plead a proximate relationship between Lilly's lost sales and reputation harm

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

10342573.1

and Mochi Health's alleged false advertisements. *Lexmark*, 572 U.S. at 133 (plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[, which] occurs when deception of consumers causes them to withhold trade from the plaintiff"). A party must allege its "injury by (1) using lost sales data, that is actual market experience and probable market behavior, or (2) creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-05638, 2020 WL 6826487, *4 (N.D. Cal. June 4, 2020) (dismissing Lanham Act claim over alleged falsity that wool shoes were "all natural" because plaintiff failed to allege chain of inferences that customers prefer "all natural products" and that Allbirds's advertising leads to it capturing a larger share of the "all-natural" shoe market).

Here, the FAC fails to plead any proximate relationship between Lilly's alleged lost sales and Mochi Health's advertisements, instead generically concluding that Mochi Health diverts patients from Lilly's drugs. FAC ¶¶ 182, 188. But it is the doctor's decision to prescribe a compounded medication, and not the patient's decision to purchase a compounded medication whenever they please. *Willow Health*, 2025 WL 2631620, *7 (no proximate cause because "a physician prescribing a compounded medication is the proximate cause of a consumer/patient using compounded medication instead of [Lilly's] medication").

Likewise, Lilly fails to plead a chain of inferences showing how Mochi Health's alleged false advertising could harm Lilly's business. Lilly has not pled any link on a long chain of inferences: it has not pled that (1) a consumer wanting Lilly's drugs came across Mochi Health's website, (2) was actually prescribed a different drug, and (3) would have received a Lilly medication but for Mochi Health's advertisements, as opposed to the doctor's decision. Without such allegations, it is implausible that Mochi Health's advertisements caused Lilly harm in a crowded weight loss market. *See* RJN, Ex. D (listing various weight-loss medications a doctor might prescribe); *BPI Sports*, 2022 WL 612669, *3. Lilly merely speculates that Mochi Health's advertisements for Lilly's products entice patients to join Mochi Health only to be prescribed compounded tirzepatide instead. FAC ¶ 179. But, the Mochi Providers, not Mochi Health, prescribe medication—whether it be Lilly's Zepbound®, Novo's Ozempic®, or a compounded tirzepatide or semaglutide—as medical

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

consultations warrant, in the exercise of that doctor's clinical judgment. Lilly's FAC fails to allege any actual lost sales proximately caused by Mochi Health's alleged false advertisements, and only speculates on merely possible scenarios.

Similarly, Lilly's reputational harm allegations remain implausible. Lilly's Reddit posts do not show that patients fail to lose weight using compounded tirzepatide, or that they attribute any dissatisfaction with these products to Lilly's drugs. As this Court admonished during the hearing on the first motion to dismiss, the "Reddit post doesn't get you there. If that's all you're relying on, don't make that allegation because it's not supported. What are the *facts* that Eli Lilly is relying on to allege, consistent with Rule 11, that consumers have failed to achieve desired results." RJN, Ex. Q at 25:19-23. The FAC has not cured this defect. Thus, Lilly fails to state a Lanham Act claim and the FAC must be dismissed.

### D.     Lilly Lacks Standing Under the UCL

Lilly brings a UCL claim (Count I) based on allegations that Mochi Health unlawfully engaged in CPOM and prescribed drugs without complying with appropriate standard of care. FAC ¶ 206. However, Lilly has no standing under the UCL, which requires Lilly to have "suffered injury in fact" *and* "lost money or property as a result of" Defendants' wrongful conduct. Bus. & Prof. Code, § 17204. These prongs are "more stringent than the federal standing requirements." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 324 (2011). As argued above, Lilly fails to plausibly plead any lost sales or other injury in fact under Article III, and thus cannot meet the UCL's stricter requirements.

### E.     The Complaint Should Be Dismissed Pending Agency Investigations

Even ignoring Lilly's incurable lack of standing, the Court should also decline Lilly's invitation to usurp the authority of administrative agencies and interfere with their ongoing investigations. Under the California doctrine of abstention, courts may abstain from adjudicating a matter where the issues "implicate technical or policy determinations usually reserved to an administrative agency." *Shuts v. Covenant Holdco LLC*, 208 Cal. App. 4th 609 (2012); *see also Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007) (courts should abstain from matter that "would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency"). Further, under the related doctrine of

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

primary jurisdiction—which has both federal and state analogues—a court may dismiss a claim that "implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority …." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008); *see also Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 390 (1992) (primary jurisdiction applies when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body").

Whether Mochi Health engaged in the unlicensed practice of medicine (Count I) is a matter reserved for the Medical Board. Whether Mochi Health made false or misleading statements about a compounded drug (Count II) is a matter that requires the expertise of FDA and the Pharmacy Board. Accordingly, these counts should be dismissed. Because conspiracy (Count III) cannot stand on its own, it must be dismissed as well.

### 1. The Medical Board Polices CPOM and Prescriptions (Count I)

Lilly's UCL claim alleges that Mochi Health is competing unfairly with Lilly by unlawfully practicing medicine and prescribing compounded drugs without an "appropriate prior examination and a medical indication." FAC ¶¶ 146-147, 206. Courts should abstain from these issues and let the Medical Board police the practice of medicine.

The practice of medicine is subject to state police powers, and not the province of federal courts absent serious constitutional concerns. *See Oregon v. Ashcroft*, 368 F.3d 1118, 1125 (9th Cir. 2004); *Linder v. United States*, 268 U.S. 5, 18 (1925). Adjudicating what constitutes "appropriate prior examination" and "medical indication" in the context of prescribing drugs is a task the California Legislature specifically delegated to the Medical Board. *See Med. Bd. of Cal. v. Chiarottino*, 225 Cal. App. 4th 623, 629 (2014) ("[Medical] Board is specifically charged with enforcement of the Medical Practice Act" including for "furnishing prescription drugs without an appropriate prior examination and medical indication"); *Kirchmeyer v. Helios Psychiatry Inc.*, 89 Cal. App. 5th 352, 356 (2023) (investigating prescriptions for whether they were "medically necessary and within the standard of care"); *Grafilo v. Soorani*, 41 Cal. App. 5th 497, 502 (2019) (same). Similarly, the Medical Board is empowered to enforce, and actively enforces, CPOM. *See* Cal. Bus. & Prof. Code § 2400; RJN Ex. I.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, Lilly's UCL claim asks the Court to create state policy from whole cloth by defining the proper standard for "an appropriate prior examination" in the context of remote prescribing. The state Legislature has not promulgated a clear policy in this area, aside from delegating enforcement over all prescribing practices to the MBC. *See Chiarottino*, 225 Cal. App. at 630. In fact, the Medical Board is already investigating whether Defendants engaged in conduct including the "unlicensed/corporate practice of medicine." RJN, Ex. P. The Court should permit this investigative process to proceed without interference.

Finally, Lilly seeks injunctive relief that would require the Court to assume the role of a administrative agency by monitoring Mochi Providers to ensure they are meeting the standard of care and are not unduly influenced by lay entities. This type of "long-term monitoring process" would "place a tremendous burden" on the court and drag it "into an area of complex economic or similar policy, making equitable abstention appropriate." *See Shamsian v. Dep't of Conservation*, 136 Cal. App. 4th 621, 641 (2006); *see also Alvarado*, 153 Cal. App. 4th at 1306.

### 2. FDA and Pharmacy Board Police the Advertising of Drugs (Count II)

The Court should decline to adjudicate the Lanham Act claim because doing so would interfere with FDA and the Pharmacy Board's functions. Lilly incorrectly claims that Defendants made false statements related to the safety and efficacy of ***compounded*** tirzepatide products, even though Defendants only made true statements about clinical studies of tirzepatide. FAC ¶¶ 175-177. Adjudicating whether clinical studies about tirzepatide apply to the specific compounded formulations at issue requires FDA and the Pharmacy Board's scientific and policy expertise. Further, FDA alone may enforce provisions of the FDCA, including those prohibiting the false or misleading advertisement of a compounded drug (*see* 21 U.S.C. § 352(bb)), and governing the ingredients used in compounded drugs). *See id.* § 353a(b). Similarly, the Pharmacy Board is tasked with enforcing regulations governing what constitutes the false and misleading advertisements of drugs. *See* Cal. Health & Saf. Code § 110390.

Lilly admits that FDA is already investigating the marketing of compounded GLP-1s, and have issued warning letters to certain compounders and telehealth companies regarding potentially false or misleading statements. FAC ¶¶ 13, 52-53, 64, 180. Indeed, FDA is precisely the type of

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

agency "actively involved in the administration of regulatory statutes" that the primary jurisdiction doctrine is "designed to protect." *Clark*, 523 F.3d at 1115. The Court should permit agencies with the requisite expertise to investigate and establish uniform standards on compounded GLP-1s, and decline to adjudicate the Lanham Act claim under the doctrine of primary jurisdiction. *See Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941-942 (N.D. Cal. 2014) (applying primary jurisdiction in case alleging misleading and untrue advertising of food ingredients because it falls within FDA's regulatory authority and FDA is currently investigating); *Backus v. General Mills, Inc.*, 122 F.Supp.3d 909, 933-934 (N.D. Cal. 2015) (applying primary jurisdiction in case alleging that a food additive is unsafe because it is a complicated scientific issue and FDA is reviewing the matter).

### F. Lilly's Claims Fail to Plausibly State a Claim

Lilly's FAC should be dismissed under Rule 12(b)(6) because it fails to plead facts establishing a facially plausible claim for relief. Courts do not credit conclusory allegations or legal conclusions cast as factual assertions. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). Each of Lilly's claims sound in fraud and must therefore meet the heightened pleading standard of Federal Rule 9(b). *See, e.g.*, *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 847 (9th Cir. 2024) (affirming dismissal of FAL, UCL, and California common law unfair competition claims where allegations of misleading conduct sounded in fraud and required heightened pleading specificity); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (claims under California consumer protection statutes sounding in fraud must meet Rule 9(b)'s heightened pleading standard, even if fraud is not an essential element of the claim). This heightened standard requires Lilly to plead the "who, what, when, where, and how" of the misconduct. *Am. Fitness*, 2019 WL 3840988, *9 (affirming dismissal of Lanham Act and unfair competition claims where plaintiff failed meet to Rule 9(b)'s heightened pleading standard); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Here, Lilly fails to allege facts demonstrating that Defendants' statements are false or misleading, much less plead fraud with the specificity required by Rule 9(b). Instead, Lilly relies on conclusory contentions of fraud, frequently on "information and belief," either because it failed to diligently investigate facts available to the public, or because it deliberately chose to omit facts undermining its FAC.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

**1. Lilly Fails to Plead a Lanham Act Claim (Cause of Action II)**

A plaintiff asserting a claim under the Lanham Act must establish that: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Lilly's false advertising claims allege that Mochi Health represents compounded tirzepatide medications as "safe and effective" ("Safety and Effectiveness Theory") and that Mochi Health represents its services as providing "personalized" or "customized" medical care ("Personalization Theory"). Both of Lilly's theories fail because Lilly has not properly pled the first, second, and fifth elements.

**a. Lilly's Safety and Effectiveness Theory Is Not Actionable**

Lilly claims that Mochi Health's blog post mentioning the SURMOUNT and SURPASS trials for tirzepatide (the active pharmaceutical ingredient in Lilly's drugs) falsely indicates that compounded medications containing tirzepatide have undergone clinical studies. FAC ¶¶ 175, 178-179; Ex. S. But Lilly fails to identify a false statement and merely sets forth an inactionable "lack of substantiation" claim. In the absence of a false statement, Lilly must plead consumer confusion, but has not. Mochi Health's statements are otherwise inactionable as "puffery."

*i. The Tirzepatide Study Citations Are Not Literally False*

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Intuit Inc. v. HRB Tax Grp., Inc.*, No. 24-00253, 2025 WL 1168897, *5 (N.D. Cal. Apr. 22, 2025). "Only an unambiguous message [] can be literally false." *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-06162, 2025 WL 3141202, *2 (N.D. Cal. Nov. 10, 2025).

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Lilly fails to identify any false statement. Lilly's FAC now claims that the blog post must be false because compounded products "may or may not" have similar specifications to Lilly's API and "may" vary batch-to-batch. FAC ¶ 178. Thus, Lilly concludes, the blog post is false because "non-Lilly tirzepatide medicines do not have the same safety and efficacy clinical data as Lilly's medicines do." *Id*. But, as this Court observed, "the active ingredient in those compounded drugs was studied" (RJN, Ex. Q at 31:18-19) and ***nowhere*** in the blog post does it say that compounded tirzepatide medications underwent these studies. (*Id.* 29:23-24). Lilly's speculations about batch-to-batch drug variations—which can also affect manufactured drugs—does nothing to cure this fatal and fundamental deficiency.

Lilly also claims that the statement "tirzepatide is safe medication that has been approved by FDA," must be false because "FDA does not approve *any* API as a 'safe medication.'" FAC ¶ 179. But Lilly itself, through counsel, has admitted "that ***tirzepatide has been established by the FDA to be safe and effective*** based on lots and lots of clinical trials." RJN, Ex. R at 7:9-11. Lilly cannot now change its tune to save its doomed theory. *See CoreCivic Inc. v. Candide Grp. LLC*, No. 20-03792, 2021 WL 1267259, *5 (N.D. Cal. Apr. 6, 2021) ("Courts may also consider, in their discretion, judicial admissions including facts 'a plaintiff freely admits' at oral argument."); *Helfand*, 105 F.3d at 535 (party bound by its attorney's assertions in other litigation). In reality, as the Court noted with the original complaint, Lilly's continues to "cherry pick[]" (RJN, Ex. Q at 65:20-21) Mochi Health's blog post to try to support its Safety and Effectiveness Theory. FAC ¶ 175. But when considered in context, the blog post explicitly discusses tirzepatide and Lilly's FDA-approved drugs—not any compounded medication. RJN, Ex. S (e.g., stating that Mounjaro® is used for type 2 diabetes and Zepbound® for obesity). Lilly merely misconstrues the blog post. *See Dyson, Inc. v. Garry Vacuum, LLC*, No. CV1001626MMMVBKX, 2011 WL 13268002, at *13 (C.D. Cal. Jan. 4, 2011) (alleged misrepresentation was not false when considered in its "full context"). At best, as Lilly admits, the blog post is ambiguous (FAC ¶ 175 (admitting that Mochi Health's blog post "doesn't distinguish[] between compounded or FDA-approved tirzepatide products"))—but ambiguity cannot equal falsity. *Blue Lake Rancheria*, 2025 WL 3141202, *2 ("[O]nly an unambiguous message can be literally false."). Because Lilly has failed to identify a false statement, its claim fails.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Two separate California district court judges have assessed Lilly's "Safety and Effectiveness Theory"; both have found Lilly's theory to be an inactionable "lack of substantiation" claim. *See, e.g.*, *Willow Health*, 2025 WL 2631620, *10 ("conclud[ing] that these statements fail to state a claim under its safety and effectiveness theory"); *Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-03536, 2025 WL 2721684, *7 (N.D. Cal. Sept. 24, 2025) ("Lilly's allegations are in fact lack of substantiation claims"). Here too, Lilly only pleads a "lack of substantiation" claim, necessitating dismissal. *See Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-2286, 2019 WL 12435672, *6 (C.D. Cal. Aug. 19, 2019) ("[A] plaintiff may not sustain false advertising claims based solely on 'lack of substantiation' grounds.").

Lilly's core allegation is that Mochi Health's statements imply—without evidence—that compounded tirzepatide drugs have been subject to clinical trials or are FDA-approved. FAC ¶ 179. Lilly's alleged falsity claim is based solely on the fact that "Mochi Health's compounded tirzepatide has never been clinically studied or proven to be safe and effective for weight loss." *Id*. The crux of Lilly's falsity argument, therefore, is that Mochi Health's statements lack testing, making them unsupported or unsubstantiated. This is precisely the type of false advertising claim that the Ninth Circuit courts regularly dismiss. *See, e.g.*, *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Courts have been careful to distinguish between allegations that a defendant's advertising claims are ***actually false*** and allegations that such claims ***lack substantiation***"); *Bronson v. Johnson & Johnson, Inc.*, No. 12-04184, 2013 WL 1629191, *8 (N.D. Cal. Apr. 16, 2013) ("A plaintiff's reliance on a ***lack*** of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim."); *Kurin, Inc. v. ICU Med., Inc.*, No. 24-00564, 2024 WL 5416672 *7 (C.D. Cal. Nov. 8, 2024) (dismissing false advertising claim as plaintiff alleged only lack of support for defendant's statements).[3] Thus, Lilly has failed to state a claim.

---

[3] *See also Adonis*, 2025 WL 2721684, at *7 (finding that "[a]ll Lilly contends is that [defendant's] advertising "falsely impl[ies] that defendant's product claims were based on credible scientific proof," but '[t]hese allegations are [just] conclusory and do nothing to support or prove the falsehood of the claims'") (quoting *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1                DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

### iii.  Lilly Fails to Plead Consumer Confusion

Since Mochi Health's statements are not literally false, Lilly claims that the references "implicitly communicate" the false message that compounded tirzepatide has undergone clinical trials. FAC ¶ 179. Lilly, however, has not pled any facts establishing that consumers are "actually" confused or deceived by Mochi Health, as required for the "true but misleading" variation of false advertising claims. *Southland Sod*, 108 F.3d at 1139.

Instead, Lilly, a trillion-dollar company, relies upon a general survey—not specific to Mochi Health's advertisements—to support its claims that consumers are "deceived as to safety and effectiveness" of compounded drugs. FAC ¶ 60. But this survey merely shows possible ***general*** public confusion regarding the entire category of GLP-1 drugs; it does not adequately (or even remotely) address the crux of the issue in this matter, *i.e.*, whether reasonable consumers are misled into believing compounded tirzepatide is safe and effective based on ***Mochi Health's*** specific blog post. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) (consumer survey did not "adequately address the primary question in [the] case" or "make plausible" the misleading allegation); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (affirming dismissal because survey was irrelevant to the operative issue in the case and therefore plaintiff failed to adequately plead consumer confusion). Therefore, Lilly's claims fail because the general survey fails to show any plausible confusion related to Mochi Health's citations to studies about tirzepatide.

### iv.  Mochi Health's "Best" Medication Or #1 GLP1 Statements Are Opinion/Puffery

Lilly, once again, alleges that the generalized and unqualified statement "Best Weight Loss Treatment of 2025" and "#1 GLP1" constitute actionable statements. FAC ¶ 193. But as the Court correctly observed during the hearing, "there is lots of Ninth Circuit cases that say 'the best' is nonactionable puffery." RJN, Ex. Q at 41:24-25; *see, e.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (YouTube's statements that it will help users "discover what works best" and "give [one] tools, insights and ***best*** practices" are not quantifiable and thus non-actionable puffery); *K & N Eng'g, Inc. v. Spectre Performance*, No. 09-01900, 2011 WL 4387094, *15 (C.D. Cal. Sept. 20, 2011) ("the phrase 'World's Best Filter' is a prototypical example of puffery"); *Fraker*

Case No. 3:25-cv-3534-JSC

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*v. KFC Corp.*, No. 06-1284, 2006 WL 8430934, *3 (S.D. Cal. Oct. 19, 2006) ("'highest quality' and '***best*** food' are vague, highly subjective claims not subject to empirical verification"). Because Mochi Health's statements "Best Weight Loss Treatment of 2025" and "#1 GLP1" are not remotely qualifiable, they constitute inactionable puffery and cannot sustain a Lanham Act claim. *See* RJN, Ex. Q at 42:18-21 (noting that Mochi Health's advertisement "just says, 'best weight loss treatment of 2025,' best, but you just listed a whole litany of things that could be best. That's the problem. We don't know 'best.' In what way?").

### b. Plaintiff's Personalization Claim Fails to Identify a False Statement

Lilly's Personalization Theory misconstrues Mochi Health's advertisements about "personalized obesity medicine" and "customized treatment plans" in an effort to allege that Mochi Health falsely advertises unique medications for each patient. FAC ¶¶151-154. But Mochi Health's advertisements are literally true, Lilly fails to plead facts showing reasonable consumers were or could be misled, and these statements are non-actionable puffery.

> ### i. *Lilly Fails to Identify a False Statement Regarding Mochi Health's Personalized Treatment Plan Statements*

Lilly contends that Mochi Health's references to "personalized" care are false because some patients receive the same compounded tirzepatide formulation, and thus the service purportedly is not individualized. FAC ¶¶ 151, 158. That premise takes Mochi Health's advertisements out of context. *Dyson, Inc.*, 2011 WL 13268002, *13 (alleged misrepresentation was not false when considered in its "full context"). Personalization refers to the process by which a provider evaluates an individual patient's needs and recommends a tailored course of care, not just medications. FAC ¶¶ 151-154 (e.g., "weight care designed for you," "customized treatment plan," and "customized obesity medicine").[4] Lilly does nothing to address the fact Mochi Health is advertising a personalized ***care plan***. However, even if, for some patients with similar presentations, the resulting medication or dosage may overlap and still be personalized. *See Allergan USA*, 2019 WL 4545960, *11 (compounded drugs, which are by definition tailored for individuals, do not have to "be different for every patient"). Because Mochi

---

[4] Obesity Medicine refers to the practice of medicine treating obesity; it is not limited to medications. *See, e.g..* the medical journal "Obesity Medicine."

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

Health's statements in context convey a personalized treatment plan process rather than a promise of a chemically unique medication for each patient, Lilly has not shown an unambiguous, literally false claim. *Blue Lake Rancheria* , 2025 WL 3141202, \*2 (only unambiguous claims can be literally false). Lilly's theory therefore fails.

### ii. Mochi Health Advertises Actually Personalized Treatment Plans, So Lilly Must Plead Consumer Confusion, But Has Failed to Do So

Because Lilly has failed to identify a literally false statement, Lilly must allege facts showing customer confusion related to Mochi Health's statements. But Lilly pleads no facts that any consumers thought their treatment plan was not "personalized." Since Lilly has failed to plausibly plead that Mochi Health's personalization claims mislead anyone, Lilly's claims fail on their face. *See Southland Sod*, 108 F.3d at 1139.

### iii. Alternatively, Mochi Health's "Personalization" Statements Are Non-Actionable Puffery

Mochi Health's personalization statements are opinion statements that are not actionable under the Lanham Act. *See Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("general, subjective claim about a product is non-actionable puffery"); *Silver v. BA Sports Nutrition, LLC*, 2020 U.S. Dist. LEXIS 99320, \*11 (C.D. Cal. Jun. 4, 2020) (same). Here, Mochi Health's statements are generalized subjective statements. There is no way to empirically measure what it means to be "personalized" or "tailored." Therefore, the personalization statements are non-actionable puffery and cannot be used as the basis for a false statement required for a viable Lanham Act claim.

### c. Lilly's Claims Are Precluded

Alternatively, Lilly's Personalization and Safety and Effectiveness Theories are precluded because the federal regulatory scheme precludes the Court from determining the truth or falsity of the statements. It is well established that the FDCA contains no private right of action; only FDA may bring actions to enforce or restrain alleged violations of the FDCA. *See* 21 U.S.C. § 337(a) (instructing "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States"). Thus, a Lanham Act claim is precluded where its

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1

adjudication would "directly conflict[] with [FDA]'s policy choice" or otherwise "undermin[e] [FDA's] judgment." *Pom Wonderful, LLC v. Coca-Cola Co.*, 573 U.S. 102, 120 (2014). Courts readily find FDCA preclusion when a plaintiff's false advertising claim cannot be resolved through simple binary factual determinations. *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. 17-1551, 2018 WL 5919210, *8 (C.D. Cal. Apr. 30, 2018) ("[C]laims that directly implicate the FDA's rulemaking authority, are not binary factual determinations, or involve an issue on which the FDA has taken positive regulatory action are all likely precluded by the FDA").

### i. Mochi Health's Statements Are Literally True Under Section 503A and the Court Is Precluded from Holding Otherwise.

To the extent Mochi Health's "personalization" advertisements relate to the compounded medications offered, Lilly's claims are precluded because they directly conflict with the federal regulatory scheme. According to Lilly's unilateral definition, "personalization" means making compounded medications one-by-one after the receipt of a prescription for a specific patient, and does not include "doses [] prepared at scale in large batches well before they are ever sold to a particular consumer." FAC ¶ 170. But the FDCA and FDA—not Lilly—determine what constitutes "personalized medication."

As discussed above, compounded medications are by nature "personalized" medications. Section 503A sets forth the parameters for how compounded medications are "personalized" or "tailored to the needs of an individual patient." *See* 21 U.S.C. § 353a(a) (requiring issuance of a prescription showing that "a compounded product is necessary for the identified patient"); *Willow Health*, 2025 WL 2631620, *10 ("The FDCA provides that compounded drugs are personalized because they are manufactured for "an identified individual patient based on the receipt of a valid … prescription order that a compounded product is necessary for the identified patient""); *Western States*, 535 U.S. at 360-61 (compounding is the "process by which a pharmacist or doctor create[s] a medication tailored to the needs of an individual patient"). As a result, compounded medications are per se "personalized" under the regulatory scheme.

Lilly's Personalization Theory requiring compounded medications to be made one-by-one contradicts the FDCA and FDA's guidance interpreting Section 503A explicitly authorizing

10342573.1

compounders to create batches of compounded medications for subsequent dispensing. *See* 21 U.S.C. § 353a(a)(2)(A)–(B)(i)(ii)(I)-(II). Doing so does not make the resulting compounded medications any less personalized. Lilly's ask, therefore, would require this Court to "directly conflict with FDA's policy choice" and otherwise "undermine FDA's judgment." *Pom Wonderful*, 573 U.S. at 120. As such, Lilly's claim must be dismissed.

> ii. *Lilly's Claims Based on the Safety and Effectiveness Statements Are Precluded by the Federal Regulatory Scheme*

Lilly's Safety and Effectiveness Theory alleges that Mochi Health's website's citations to tirzepatide data are inappropriate when applied to compounded medications because there are differences between Lilly's drugs and the combinations of other ingredients in compounded medications, and there are no studies specific to compounded medications. FAC ¶ 135. But, the FDCA sets forth the active pharmaceutical ingredient requirements for compounded medications and specifically authorizes compounders to utilize active pharmaceutical ingredients that are "a component of a drug approved by [FDA]." 21 U.S.C. § 353a(A)(b)(1)(A)(i)(II). Accordingly, tirzepatide can be used in compounding following a doctor's finding of necessity.

Nevertheless, Lilly seeks to have this Court rule on the open-ended question of whether it is appropriate to reference data about tirzepatide when discussing certain types of tirzepatide-containing compounded medications in advertising. But FDA, not private manufacturers, oversees compounded drug advertisements. *See* 21 U.S.C. § 352(bb) (prohibiting "the advertising or promotion of a compounded drug [if it] is false or misleading in any particular"). FDA has not promulgated any regulations or issued guidance interpreting Section 352(bb)—there is certainly no FDA guidance as to what types of studies compounders can cite in advertisements regarding the active ingredients. Lilly's citation to Warning Letters that FDA issued to *other* entities (not Mochi) does not alter this fact.[5] A Warning Letter is not a final determination of FDA's position on a matter. *See Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996) (FDA warning letters

---

[5] Unlike Mochi Health, Lilly is one of the entities that did receive a Warning Letter from FDA regarding its advertisements. Therein, FDA indicates that "FDA has determined that [Lilly's] video is false or misleading. Thus, the video misbrands Zepbound and makes the distribution of the drug in violation of the Federal Food, Drug, and Cosmetic Act." RJN, Ex. T.

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

10342573.1

do not amount to an FDA position on a matter because FDA can change its final decision); *Cytosport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1294 (E.D. Cal. Sept. 6, 2012) (FDA warning letters are informal and advisory, and do not amount to an FDA action).

Thus, the question of whether it is appropriate for advertisements for compounded medications to reference clinical studies regarding their active pharmaceutical ingredient remains an open-ended determination only suited for FDA. FDA has not weighed in with finality. *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. 17-1551, 2017 WL 10526121, \*7 (C.D. Cal. Nov. 14, 2017) (open-ended determinations are precluded). Because Lilly's Lanham Act claim requires nuanced determinations by FDA to establish falsity, Lilly's claims are precluded and must fail.

### d. Lilly Fails to Plausibly Plead Proximate Cause

For the same reasons that Lilly fails to establish statutory standing—because Lilly's alleged harms are attributable to independent prescriber determinations and Lilly's reputational harm is contradicted—it also fails to adequately plead the Lanham Act's fifth element: proximate cause. *See Southland Sod*, 108 F.3d at 1139 (plaintiff must allege that they have been or are likely to be injured as a result of the false statement). Moreover, Lilly provides no facts to plead that Mochi Health's Personalization claims cause Lilly lost profits. Lilly only pleads the conclusion/belief that Personalization claims cause patients to choose Mochi Health. Even then, the allegation is inherently meaningless. Choosing Mochi Health is choosing a telehealth platform with access to prescribers, not specific prescriptions. Lilly ignores the roles of both patients and prescribers in this decision, and cannot identify anyone (even on Reddit) claiming that they chose compounded drugs over Lilly's because the former were personalized. Lilly has no facts and is not entitled to an inference because it is neither plausible nor reasonable. Thus, Lilly's false advertising claim fails. *See Am. Fitness*, 2019 WL 3840988, \*9 (failure to allege causal link between false advertising and injury warranted dismissal). As such, Lilly's Lanham Act claim warrants dismissal at the 12(b)(6) stage.

### 2. Lilly Fails to Plead Unlawful, Unfair, or Fraudulent Acts Under the UCL

Lilly's conclusory allegations fail to establish that Mochi Health engaged in business practices that are (a) unlawful, (b) unfair, or (c) fraudulent as required to state a claim under the UCL. Cal. Bus. & Prof. Code § 17200.

a.  **Lilly Fails to Plead Unlawfulness.**

Lilly's allegation that Mochi Health unlawfully engaged in CPOM rests on nothing more than conclusory assertions, rather than plausible facts. For instance, Lilly claims that Mochi Health exerted "undue influence" over Mochi Medical, yet fails to identify any conduct that constitutes the CPOM. FAC ¶ 85. The acts alleged—including Mochi Health advertising a network of doctors (*id.* ¶ 83), publishing job postings (*id.* ¶ 85), and furnishing a "custom-built" electronic medical records system and obesity protocols (*id.* ¶ 89)—are lawful and commonplace. Crucially, Lilly does not allege any facts showing that Mochi Health usurped the ultimate hiring and firing authority of Mochi Medical, or dictated how physicians must order diagnostic tests or render particular diagnoses. Instead, the Complaint describes administrative functions that Mochi Health is permitted to perform under California law. *See Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504, 517 (2015) (finding no CPOM where MSO handled tasks including the medical practice's marketing, billing, collections, and accounting, and did not exercise control over the doctor's practice of medicine).

Lilly similarly fails to plead plausible facts supporting its conclusion that Mochi Health unlawfully prescribed or altered compounded drugs without appropriate prior examination or medical indication. This claim is based on two unfounded premises: that Mochi Health unilaterally altered drug (1) dosages, and (2) formulations. FAC ¶ 147. First, based solely on the allegation that Mochi Health *publicized* changes to the dosage schedule of compounded drugs (FAC ¶ 122), Lilly claims on "information and belief" that Mochi Health unilaterally *compelled* such changes without giving patients or providers notice or clinical justification. *Id.* ¶ 128. This inferential leap is precisely the type of pure speculation that cannot survive dismissal. Lilly's selective use of the phrase "on information and belief" should signal to the Court that it "likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, *2 (N.D. Cal. Mar. 19, 2014). Further, pleading facts "merely consistent with a defendant's liability" is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Lilly does not allege that Mochi Health directed physicians to issue specific prescriptions. Instead, Lilly asks the Court to assume a nefarious cause, when it is equally—if not more—plausible

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1

that the physicians of Mochi Medical exercised their independent professional judgement in prescribing medications for patients.

Second, Lilly's conclusion that Mochi Health unilaterally altered drug formulations—including by switching patients' drug suppliers "wholesale" (FAC ¶ 131)—is not only unsupported, but actually contradicted, by the facts pled in the FAC. For instance, Lilly pleads that, in a single week, different Mochi Health customers received different compounded tirzepatide formulations from three different pharmacies. *Id.* ¶¶ 143-144; nn.134-136. That individual pharmacies set their own formulations make it implausible that Mochi Health is dictating formulations changes wholesale. Instead, the facts as alleged only show that Mochi Health *communicated* information about drug formulations, which vary amongst pharmacies and patients. *Id.* ¶ 139-140. Further, Lilly does not plausibly allege that Mochi Health unilaterally switched pharmacies wholesale; instead, it only establishes that Mochi Health partnered with multiple pharmacies during the relevant period. Lilly's switching theory stems from a Reddit post made by an anonymous user who allegedly received drugs from the pharmacy Southend in August 2024 after previously receiving them from Empower. *Id.*, ¶ 131, n.120; RJN, Ex. U. But there are no facts supporting that Mochi Health directed such a switch, or showing how many patients were supposedly affected. *Id.* Indeed, Reddit comments state that customers have received drugs from multiple partner pharmacies, undercutting Lilly's allegation that any wholesale switch occurred. *Id.* Then, Lilly asserts that in November 2024, Mochi Health "finalized" moving patients to Aequita Pharmacy, this time citing a Reddit post that does not even identify *any* pharmacy. *Id.* ¶ 133-134, n.121; RJN, Ex. V. Immediately refuting its prior claims, Lilly then alleges that in April 2025—months after the mass switch to Aequita was supposedly "finalized"—different Mochi Health customers received compounded drugs from three different pharmacies, including both Empower and Southend. *Id.* ¶¶ 143-144; nn. 134-136. In sum, Lilly fails to plausibly plead that Mochi Health overrode the independence of physicians and pharmacists in anyway with respect to prescription decisions. To the contrary, the FAC corroborates that Mochi Health worked with multiple pharmacies, each having the discretion to change formulations based on their professional judgment. Finally, to the extent Lilly claims that compounding certain ingredients with tirzepatide is dangerous or unlawful (*id.* ¶¶ 55, 130), it advances "veiled allegations of an FDCA

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

violation" that are precluded by law and warrant the dismissal of its UCL claim. *Argueta v. Walgreens Co.,* 760 F. Supp. 3d 1028 (E.D. Cal. 2024).

Because Lilly cannot allege any concrete CPOM violations, it wants the Court to infer that such violations occurred based on completely irrelevant and unsubstantiated allegations about Mochi Health—including about its employment practices—that purport to show a "pattern and practice" of unlawful conduct. FAC ¶¶ 117-118. These immaterial allegations "do not permit the court to infer more than the mere possibility of misconduct," cannot support the FAC's causes of action, and should be disregarded. *Iqbal*, 556 U.S. at 679.

Lilly's baseless conjecture and conclusions fall far short of the pleadings in cases where courts have ruled that the plaintiff sufficient alleged CPOM violations. For example, in *Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*, the plaintiff alleged, among other things, that the defendant lay entity (1) decided how many and which physicians to hire, when to fire them, their compensation, work schedule and conditions, and their number of patient encounters; (2) negotiated with third-party payors and insurers without physicians' knowledge; (3) held the rights to the proceeds of medical billings, and made coding and billing decisions without physicians' knowledge; and (4) forced physicians to sign non-compete agreements. No. 22-421, 2022 WL 2037950, *4-5 (N.D. Cal. 2022). Lilly's bare assertions come nowhere close to what was pled in *Envision*. Finally, as argued above, Lilly also fails to plead that Defendants unlawfully made false or misleading statements. Accordingly, Lilly fails to assert the unlawful prong of the UCL.

### b. **Lilly Fails to Plead Unfairness.**

Lilly does not make any factual allegations supporting the "unfair" prong of the UCL. As a purported competitor, rather than an aggrieved customer, Lilly can allege three possible predicates for an unfair competition claim: "conduct that threatens [1] an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 182, 187 (1999). Pleading "only individualized harm" to specific plaintiffs is insufficient to establish a significant threat to overall competition necessary to establish "unfair" conduct. *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Cal. App. 4th 480, 501 (2011). Lilly does not plead that Mochi Health violated antitrust law, that its conduct is comparable to violating antitrust law, or that it otherwise threatens overall competition. Lilly cannot plausibly make any such allegations because, unlike Lilly, Mochi Health does not have any notable market share in, or have the ability to meaningfully impact, the weight-loss drug space.

c.      <b>Lilly Fails to Plead Fraud.</b>

As argued above, the Complaint fails to plead fraud with specificity under Rule 9(b), and thus fail to establish false advertising claims under the Lanham Act. The fraud prong of the UCL is subject to the same analysis as these causes of action. *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. 12-3762, 2014 WL 572290, \*3 (N.D. Cal. Feb. 11, 2014); *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994). As with Lilly's Lanham Act claim, its fraud claim under the UCL must also fail.

<b>3.      Lilly Fails to Plead A Conspiracy Claim (Cause of Action III)</b>

<b>a.      Conspiracy Is Not A Stand Alone Cause of Action</b>

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 510–11 (1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id*. at 511. Because Lilly has failed to sufficiently plead any preceding causes of action against the defendants, the conspiracy cause of action should be dismissed.

<b>b.      Lilly Did Not Adequately Plead Conspiracy</b>

Additionally, even if Lilly had adequately plead causes of action against Mochi Health, Lilly has not adequately plead the elements of civil conspiracy. "Even in a complaint, formulaic recitation and 'conclusory statements' will not suffice to allege conspiracy plausibly." *United Bhd. of Carpenters & Joiners of Am. v. Building & Cont'l Trade Dep't*, 770 F.3d 834, 842 (9th Cir. 2014). The elements of civil conspiracy are "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp*., 40 Cal. App. 4th 1571, 1581 (1995). Once an underlying tort is established, there must be a showing that the conspiring defendants had actual knowledge that a tort

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

is planned and concur in the scheme with knowledge of its unlawful purpose. *Id.* at 1582. In other words, "knowledge of the planned tort must be combined with intent to aid in its commission." *Id.*

### i. Lilly Has Not Adequately Alleged Formation of a Conspiracy

"Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." *Kidron*, 40 Cal. App. 4th at 1582 (internal quotations omitted). Lilly only alleges conclusory facts or circumstances to support the formation of a conspiracy between Mochi Health, Mochi Medical and Aequita Defendants. In sum, Lilly alleges that Mr. Chaibi owns Aequita Corporation which in turn has an ownership interest in Aequita Pharmacy, that Aequita Corporation and Aequita Pharmacy have the same address, and they "function as a single enterprise" without any supporting facts. FAC ¶¶ 5, 20-21, 25, 76. Lilly also makes irrelevant allegations in an attempt to distract the Court from its lack of cognizable legal theory, including several allegations about an entity, Aequita Bioworks, which is not a named defendant in this action, *id.* ¶¶ 77-79, and that an office building near the Aequita Defendants is labeled "Mochi" according to Google Maps. *Id.* ¶ 76. None of these allegations support a conspiracy between the Mochi Defendants and the Aequita Defendants.

Lilly additionally alleges that Aequita Pharmacy and Mochi Health had a partnership under which Aequita Pharmacy filled prescriptions, Mochi Health listed Aequita Pharmacy jobs on its job board, and that a Reddit user claims to have received a response from Mochi Health when it contacted the Pharmacy. FAC ¶¶ 93, 96-97. These allegations at most amount to mere association and do not allege or support an allegation that there was an agreement to an unlawful scheme. *See Kidron*, 40 Cal. App. 4th at 1582. Nor do the unfounded allegations of unlawfully importing medications from China or the allegations about investigations into Aequita Pharmacy operations provide support for a conspiracy between the defendants. *See* FAC ¶¶ 100, 102-103. Furthermore, Lilly makes *no* allegations that Aequita Defendants or Mochi Medical had any knowledge of or involvement in the alleged wrongdoing that forms the basis for the other causes of action.

### ii. Lilly Has Not Alleged Facts to Support a Conspiracy to Commit Unfair Competition or False Advertising

The basis for Lilly's first cause of action are allegations that Mochi Health unlawfully engaged

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

10342573.1

in the unlicensed practice of medicine; unlawfully modified the formulation or dosage of prescriptions; and altered prescriptions without examination by a physician. *See* FAC ¶¶ 202-210. The basis for Lilly's second cause of action, false or misleading advertising, are allegations that Mochi Health made false statements that their prescribed Tirzepatide is personalized and that it is safe and effective for weight loss. *Id.* ¶ 140; *see also* ¶¶ 151-182. Not only do these entire causes of action fail, as described above, but Lilly has also failed to allege how the Aequita Defendants and Mochi Medical *each* "acted in concert and came to a mutual understanding to accomplish" this alleged unlawful conduct or what overt act was committed to further it. *See AREI II Cases,* 216 Cal. App. 4th 1004, 1022 (2013).

Lilly fails to allege that Aequita Defendants or Mochi Medical knew of or agreed to any of the alleged unlawful conduct, or allege an overt act in furtherance of the alleged conspiracy. The FAC does not identify any affirmative conduct by Aequita Corporation or Mochi Medical and only alleges that Aequita Pharmacy filled prescriptions. Merely filling prescriptions as written is a lawful act that pharmacies are licensed to perform. This does not constitute an overt act in furtherance of a conspiracy, particularly where Lilly has not alleged that the pharmacy knew or should have known said prescriptions were unlawful. Additionally, the allegations fail to distinguish between Aequita Pharmacy, Aequita Corporation and Mochi Medical or explain how each entity separately participated in the alleged conspiracy. Lilly's failure to state specific allegations as to each entity's role is insufficient to state a claim for conspiracy, which should be dismissed.

## IV. CONCLUSION

Lilly has not plausibly pled that it was injured by Defendants' conduct, or that its purported injuries could be redressed via this action. Nor has it pled the essential elements of any cause of action. Lilly's defective FAC demonstrates that further amendment would be futile. For the foregoing reasons, Defendants respectfully request that the FAC be dismissed in its entirety with prejudice.

//

//

//

//

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

10342573.1

DATED: December 12, 2025        HOOPER, LUNDY & BOOKMAN, P.C.


By:    */s/ Joseph R. LaMagna*
              JOSEPH R. LAMAGNA
              BENJAMIN Y. LIN
              ANDREA L. FREY
        Attorneys for Defendants

HOOPER, LUNDY & BOOKMAN, P.C.
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

10342573.1        DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December 2025, I have electronically filed the foregoing DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel on the CM/ECF list for this case.

*/s/ Joseph R. LaMagna*
JOSEPH R. LAMAGNA

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. BROADWAY, SUITE 1200
SAN DIEGO, CALIFORNIA 92101
TEL (619) 744-7300 • FAX (619) 230-0987

Case No. 3:25-cv-3534-JSC

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

10342573.1